[No. H019262. Six Dist. Sept. 8, 1999.]

CITY OF SAN JOSE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
SAN JOSE MERCURY NEWS, INC., Real Party in Interest.

COUNSEL

Joan R. Gallo, City Attorney, George Rios, Assistant City Attorney, and Robert Fabela, Deputy City Attorney, for Petitioner.

Louise H. Renne, City Attorney (San Francisco), Burk E. Delventhal, Deputy City Attorney, and Amy S. Ackerman, Deputy City Attorney, for City and County of San Francisco as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Edward P. Davis, Jr.; Skjerven, Morrill, MacPherson, Franklin & Friel and James M. Chadwick for Real Party in Interest.

## OPINION

## COTTLE, P. J.—

### I. INTRODUCTION

This original proceeding concerns an issue of first impression under the California Public Records Act, Government Code section 6250 et seq.[1] (the Act): whether a city may refuse to disclose the names, addresses, and telephone numbers of persons who have made complaints to the city about municipal airport noise. The City of San Jose (City) petitions for a writ of mandate directing respondent court to vacate its amended order and judgment, which (1) granted the petition of real party in interest, the San Jose Mercury News, Inc. (Mercury News), for a writ of mandate; and (2) directed issuance of a writ compelling City to disclose the names, addresses, and telephone numbers of all persons who made airport noise complaints in January 1998, with redaction only of the names, addresses, and telephone numbers of complainants where that information is protected by statute.[2]

City contends that respondent court erred, because the public interest in disclosure of the names, addresses, and telephone numbers of persons who have made airport noise complaints is clearly outweighed by the public interest in protecting the complainants' privacy and in preventing a chilling effect on complaints. We agree. Under the facts of this particular case, where

---

[1] All statutory references hereafter are to the Government Code, unless otherwise noted.

[2] We granted the application of City and County of San Francisco and 51 additional cities for leave to file an amicus curiae brief in support of City's petition for writ of mandate. The additional cities on the brief are the cities of Albany, Alameda, Bakersfield, Benecia, Brentwood, Buelton, Burbank, Carlsbad, Carpinteria, Chula Vista, Del Rey Oaks, Exeter, Fremont, Hawaiian Gardens, Hollister, Huntington Beach, Lafayette, Lakewood, Lindsay, Los Altos, Marina, Millbrae, Modesto, Monterey, Napa, Needles, Newport Beach, Pacifica, Palm Desert, Pico Rivera, Port Hueneme, Porterville, Redlands, San Diego, San Pablo, Santa Paula, Santa Rosa, Sunnyvale, Thousand Oaks, Tiburon, Tracy, Tulare, Vacaville, Victorville, Walnut, Walnut Creek, Westminster, Whittier, Woodlake, and the Town of Atherton.

City makes public a monthly noise report and other records which provide a wealth of information about airport noise complaints, the public's interest in disclosure of the complainants' identity and personal information is minimal. It is not necessary to disclose the names, addresses, and telephone numbers of the complainants for the public to have access to vital information about City's performance of its state-mandated duty to record and report airport noise complaints. Accordingly, we find that the public interest in protecting the privacy of noise complainants and in preventing a chilling effect on complaints, clearly outweighs the public interest in disclosure of complainants' names, addresses, and telephone numbers. We therefore issue a peremptory writ of mandate as requested by City.

## II. Factual and Procedural Background

### A. *The Mercury News's California Public Records Act Request*

City owns and operates the San Jose International Airport (Airport). In March 1998, the Mercury News, a daily newspaper of general circulation, sent a written request to Airport's director of aviation for disclosure of public records in accordance with the Act. In particular, the Mercury News sought access to the names, addresses, and telephone numbers of 215 individuals who had made written, telephonic, or e-mail complaints about airport noise during the month of January 1998. The Mercury News also sought disclosure of tapes and transcriptions of the January 1998 telephonic complaints.

City operates Airport under a noise variance from California's airport noise standards, as set forth in the California Code of Regulations, title 21, section 5012. As a condition of maintaining the noise variance in effect, the California Department of Transportation requires City to implement a program for accepting, responding to, and reporting airport noise complaints. Members of the public may make complaints by telephoning Airport, and providing their name, address, telephone number, and time and nature of their complaint, either directly to Airport staff, or by leaving a recorded message. The complaints are made voluntarily, and Airport does not provide any assurances of confidentiality. City intends the noise complaint program to encourage complaints, which are then independently investigated by City.

As part of its program, City prepares monthly noise reports. These reports summarize the following complaint information for each month: (1) the total number of noise complaints; (2) how many persons made the complaints: (3) average complaints per day; (4) location of complaints by city area; (5) time of day of complaints; and (6) a breakdown of the nature of the complaints,

including categorization of whether private or commercial planes were involved, and the type of complaints (intrusion, loud aircraft, overflight, frequency, or other).

City also maintains a computer data base which it describes as "contain-[ing] the names, addresses, telephone numbers, the date and time of the actual event as reported by the complainant, the date and time the call was recorded, the complainant's reported zip code, the designated noise sensitive areas corresponding to specific zip codes, whether the complainant is a first time caller, whether the complaint regards a commercial or general aviation flight, the type of complaint (e.g. loud, frequency or intrusion related), and any additional comments made by the complainant and flight details regarding intrusions associated with the complaint." A printed summary of the complaint data base, excluding the names, addresses, and telephone numbers of the complainants, can be prepared by City.

In response to the Mercury News's request for disclosure under the Act, the San Jose City Attorney's office advised that City could not release the names, addresses and telephone numbers of the complainants because their privacy rights outweighed the public interest in disclosure. The city attorney also advised that City had no transcriptions of complaint calls. However, City provided the newspaper with a copy of its monthly noise report. City also offered to provide the Mercury News with a list indicating the date and time of each telephone call, and the nature of the airport noise complaint made during the call.

## B. *Writ Proceedings in the Trial Court*

The Mercury News was not satisfied with the airport noise complaint information provided by City, and filed a petition for a writ of mandate in respondent court, pursuant to section 6258.[3] The petition sought a writ of mandate compelling City to disclose the names, addresses and telephone numbers of the January 1998 airport noise complainants, as well as all tapes and transcriptions of their complaints. The Mercury News argued that it was entitled to disclosure of this information under the Act, because the information concerned a matter of significant public interest, airport noise, and therefore the public interest in disclosure was not outweighed by the complainants' privacy interest.

Specifically, the Mercury News contended in its petition that writ relief was necessary, because "[w]ithout the identity of the complainants or specifics regarding their complaints, the summary information offered by the

---

[3]Section 6258 provides, in pertinent part, "Any person may institute proceedings for injunctive or declarative relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under this chapter."

City is next to useless. The validity of the complaints cannot be evaluated without access to those individuals doing the complaining. Understanding the extent of the noise problem—and thereby providing information to the public so the positions of the City and those complaining about the noise can be evaluated—is impossible without access to the details, e.g., the nature of the complaints themselves."

Respondent court issued an alternative writ of mandate and order to show cause in April 1998. City filed opposition to the petition for writ of mandate. In its opposition, City argued that the airport noise complainants' privacy interest in their personal information outweighed the public interest in disclosure of their names, addresses, and telephone numbers. If this personal information was disclosed, City asserted, the complainants would be subject to harassment and intimidation, and the public's reporting of airport noise complaints would be chilled.

In support of its arguments in opposition, City submitted copies of a number of letters it had received from Jon Rodgers (Rodgers), representing an organization called Aircraft Pilots of the Bay Area, Inc. (Aircraft Pilots). In his letters, Rodgers requested that City comply with the Act by disclosing the names, addresses, and telephone numbers of airport noise complainants. City had refused to do so. Additionally, City submitted a copy of an article from a newsletter captioned "California Pilot, Official Publication of California Pilots Association[,] The Airport Defenders," dated May 1995. The newsletter article was entitled "The More You Complain, the More You Must Disclose" and discussed Rodgers's efforts to obtain disclosure of the identity of airport noise complainants. Included in the article was the following statement: "The effect of Rodgers' message on complaining homeowners and anti-airport groups has been salutary. . . . [¶] As reported last month, the latest shining example of how well the disclosure law works when anti-airport groups are given the message, is the success of the Tahoe Valley Airport. Noise complaints there fell from a high of 450 prior to 1994, to only 36 last year."

On June 5, 1998, respondent court held a hearing on the Mercury News's petition for a writ of mandate. The court granted the petition, explaining that the public interest in receiving information about airport noise complaints was very strong: "[T]he public has the right to know whether or not the governmental entity is doing a good job in taking care of the problems and what the nature and extent of the complaints are to hold the governmental entity accountable for decision making in that regard." The court concluded that this strong public interest was not outweighed by City's mere speculation that disclosure of complainants' names, addresses, and telephone numbers would chill further complaints, noting that City's evidence of potential

harassment by pilots' organizations was based on old letters which lacked probative value, and because there was no evidence of pilots' organizations actually intimidating a noise complainant. On June 23, 1998, the court issued the writ of mandate as requested by the Mercury News.

Subsequently, City filed a motion for reconsideration pursuant to Code of Civil Procedure section 1008, contending that it had new evidence of the threat of intimidation of airport noise complainants by the Aircraft Pilots organization. The new evidence submitted by City included more recent letters from the Aircraft Pilots organization to the manager of the Van Nuys Airport, in which the organization requested disclosure of name, address and telephone number of a frequent airport noise complainant. City also submitted copies of letters from Aircraft Pilots to real estate brokers. The letters advised the real estate brokers of the risk that homeowners would expose themselves to fraud liability if they complained about airport noise, then later failed to disclose the noise problem to home buyers.

Respondent court granted the motion for reconsideration, and on September 24, 1998, issued an amended writ of mandate. As a result of the Mercury News's concession during oral argument that certain complainants' personal information should be redacted, the writ stated, "Immediately upon receipt of this writ to permit public access to and provide copies of the complaints about Airport noise received by the City or the San Jose Airport, including, if any, transcriptions of the complaints, and the names, addresses, and phone numbers of the individuals who complained. You may within 20 days redact from the records provided pursuant to this order and judgment the names, addresses, and/or phone numbers of the individuals who have complained and whose names, addresses, and/or phone numbers are expressly made exempt from public disclosure by statute." The court stayed the execution of the amended writ of mandate until such time as this court issued a ruling on whether the writ would be stayed pending appellate review.

## C. Writ Proceedings in the Appellate Court

City objected to the trial court's amended order and judgment directing issuance of the writ to City, and filed a writ petition in this court, seeking a peremptory writ of mandate directing respondent court to vacate its amended order and judgment, and to issue a new order denying the Mercury News's writ petition. City also requested a temporary stay of the amended order pending our consideration of its writ petition. We granted the temporary stay as requested, and issued an order to show cause why the relief sought by City in its petition for writ of mandate should not be granted.

## III. Discussion

### A. *The Standard of Review for Orders Under the Act*

■ Pursuant to section 6259, subdivision (c), an order of the trial court under the Act, which either directs disclosure of records by a public official or supports the official's refusal to disclose records, is immediately reviewable by petition to the appellate court for issuance of an extraordinary writ. (*Times Mirror Co.* v. *Superior Court* (1991) 53 Cal.3d 1325, 1336 [283 Cal.Rptr. 893, 813 P.2d 240] (hereafter *Times Mirror*).) The standard for review of the order is "an independent review of the trial court's ruling; factual findings made by the trial court will be upheld if based on substantial evidence." (*Ibid.*) In the present case, respondent court made a finding that City had not shown that any airport noise complainants were actually intimidated by the possibility of disclosure of their names, addresses, and telephone numbers, and we conclude that substantial evidence supports that finding. Keeping that finding in mind, we review respondent court's amended order and judgment de novo.

### B. *Disclosure of Public Records and the Right to Privacy*

Section 6250 expressly sets forth the purpose of the Act: "In enacting this chapter, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (See *Times Mirror, supra,* 53 Cal.3d at p. 1338; see also *Wilson* v. *Superior Court* (1996) 51 Cal.App.4th 1136, 1141 [59 Cal.Rptr.2d 537].) ■ Thus, the Act was passed "to ensure public access to vital information about the government's conduct of its business." (*CBS, Inc.* v. *Block* (1986) 42 Cal.3d 646, 656 [230 Cal.Rptr. 362, 725 P.2d 470] (hereafter *CBS*).)

The Act was modeled upon the federal Freedom of Information Act (5 U.S.C. § 552 et seq., hereafter FOIA), and has a common purpose. (*Times Mirror, supra,* 53 Cal.3d at p. 1338; see also *Department of Defense* v. *FLRA* (1994) 510 U.S. 487 [114 S.Ct. 1006, 127 L.Ed.2d 325] (hereafter *Department of Defense*) [FOIA's " 'core purpose' " (*id.* at p. 495 [114 S.Ct. at p. 1012]) is to contribute significantly to public understanding of government activities].) Accordingly, federal "legislative history and judicial construction of the FOIA" may be used in construing California's Act. (*Times Mirror, supra,* 53 Cal.3d at p. 1338.)

Disclosure of public records has the potential to impact individual privacy. The Act defines "public records" broadly to include "any writing containing

information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (§ 6252, subd. (e); *Wilder* v. *Superior Court* (1998) 66 Cal.App.4th 77, 81 [77 Cal.Rptr.2d 629].) Public records can include "personal details about private citizens," and disclosure may infringe upon privacy interests. (*U.S. Dept. of Justice* v. *Reporters Committee* (1989) 489 U.S. 749, 764, 766 [109 S.Ct. 1468, 1477-1478, 103 L.Ed.2d 774] (hereafter *Reporters Committee*); see also *Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 651 [117 Cal.Rptr. 106] (hereafter *Black Panther Party*) ["[s]ocietal concern for privacy focuses on minimum exposure of personal information collected for governmental purposes"].)

■ Disclosure of public records thus involves two fundamental yet competing interests: (1) prevention of secrecy in government; and (2) protection of individual privacy. (*Black Panther Party, supra*, 42 Cal.App.3d at p. 651.) Consequently, both the FOIA and the Act expressly recognize that the public's right to disclosure of public records is not absolute.[4] In California, the Act includes two exceptions to the general policy of disclosure of public records: (1) materials expressly exempt from disclosure pursuant to section 6254[5]; and (2) the "catchall exception" of section 6255, which allows a government agency to withhold records if it can demonstrate that, on the facts of a particular case, the public interest served by withholding the records clearly outweighs the public interest served by disclosure.[6] (*CBS, supra*, 42 Cal.3d at p. 652.)

---

[4]An FOIA example is exemption 6, which protects personnel and medical and similar files when disclosure would constitute a clearly unwarranted invasion of personal privacy (5 U.S.C. § 552(b)(6)). (*Department of Defense, supra*, 510 U.S. at pp. 494-495 [114 S.Ct. at pp. 1011-1013].)

[5]Personal information expressly protected from disclosure under the Act, as set forth in section 6254, include library circulation records (subd. j), statements of personal worth or financial data collected by a licensing agency (subd. n), information contained in applications to carry concealed weapons (subd. (u)(1)), home addresses and telephone numbers of peace officers, judges, court commissioners set forth in applications or licenses to carry concealed weapons (subd. (u)(2), (3)), and financial data in applications for registration as a service contractor (subd. (x)). Other personal information also expressly exempted from disclosure by the Act includes home addresses and telephone numbers of registered voters (§ 6254.4), home addresses, telephone numbers and usage data of utility customers (§ 6254.16), home addresses and telephone numbers of elected or appointed officials (§ 6254.21), home addresses and telephone numbers of state, school district, and county office of education employees (§ 6254.3) residence addresses in Department of Housing and Community Development records where confidentiality requested (§ 6254.1, subd. (a)), and residence or mailing addresses in Department of Motor Vehicles records (§ 6254.1).

[6]Section 6255 provides, "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record."

A similar balancing test is utilized in FOIA cases, when an issue of disclosure versus privacy arises: "[I]n evaluating whether a request for information lies within the scope of a FOIA exemption, such as Exemption 6, that bars disclosure when it would amount to an invasion of privacy that is to some degree 'unwarranted,' 'a court must balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect.' " (*Department of Defense, supra*, 510 U.S. at p. 495 [114 S.Ct. at p. 1012].) The public interest in disclosure which must be weighed, is the interest in whether disclosure would contribute significantly to public understanding of government activities. (*Ibid.*)

 The burden of proof is on the proponent of nondisclosure, who must demonstrate a "clear overbalance" on the side of confidentiality. (§ 6255; *Black Panther Party, supra*, 42 Cal.App.3d at p. 657.) The purpose of the requesting party in seeking disclosure cannot be considered. (§ 6257.5; *Connell* v. *Superior Court* (1997) 56 Cal.App.4th 601, 616 [65 Cal.Rptr.2d 738]; see also *Department of Defense, supra*, 510 U.S. at p. 495 [114 S.Ct. at pp. 1012-1013].) This is because once a public record is disclosed to the requesting party, it must be made available for inspection by the public in general. (*Black Panther Party, supra*, 42 Cal.App.3d at p. 656.) It is also irrelevant that the requesting party is a newspaper or other form of media, because it is well established that the media has no greater right of access to public records than the general public. (*Rogers* v. *Superior Court* (1993) 19 Cal.App.4th 469, 476 [23 Cal.Rptr.2d 412].) Nor is the convenience of researchers a factor to be considered. (*Reporters Committee, supra*, 489 U.S. at p. 772, fn. 20 [109 S.Ct. at p. 1481] [" '. . . it was never suggested that the FOIA would be a boon to academic researchers, by eliminating their need to assemble on their own data which the government has already collected' "].)

Thus, in determining whether public records which are not expressly exempted from disclosure must be disclosed over the government's objection, California courts apply the section 6255 balancing test for the catchall exception on a case-by-case basis. Where the public interest in disclosure of the records is not outweighed by the public interest in nondisclosure, courts will direct the government to disclose the requested information. (See *CBS, supra*, 42 Cal.3d at pp. 656-657 [names, home addresses and applications of persons who obtained concealed weapons permits must be disclosed]; *New York Times Co.* v. *Superior Court* (1990) 218 Cal.App.3d 1579, 1585-1586 [268 Cal.Rptr. 21] [disclosure of names and addresses of excessive water users ordered]; *New York Times Co.* v. *Superior Court* (1997) 52 Cal.App.4th 97, 104 [60 Cal.Rptr.2d 410] [names of sheriff's deputies who fired weapons must be disclosed].)

Conversely, courts have upheld the government's refusal to release public records when the public interest in nondisclosure clearly outweighed the public interest in disclosure. (See *Reporters Committee, supra,* 489 U.S. at pp. 774-775 [109 S.Ct. at pp. 1482-1483] [no disclosure of FBI rap sheet when disclosure would serve curiosity rather than public interest]; *Times Mirror, supra,* 53 Cal.3d at p. 1345-1346 [Governor's appointment schedules and calendars properly withheld to protect public interest in decisionmaking process and governor's security]; *Wilson* v. *Superior Court, supra,* 51 Cal.App.4th at p. 1141 [no disclosure of applications for appointment to county board of supervisors due to chilling effect on applications and negative impact on decisionmaking process].)

## C. *Disclosure of the Identities and Personal Information of Complainants*

As the decisions noted above indicate, requests for disclosure of public records which contain personal information about individuals often trigger litigation under the Act and the FOIA. However, no decisions have been cited by the parties or located through our own research, which address the issue of whether a city must disclose identities of airport noise complainants. Public records decisions in other contexts, which concern the disclosure of addresses and telephone numbers, and/or the identity of complainants, provide a helpful framework for deciding the issue at hand.

### 1. *Disclosure of Names and Addresses*

First, we note that the United States Supreme Court has stated that, "disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind." (*Reporters Committee, supra,* 489 U.S. 749, 765 [109 S.Ct. 1468, 1478].) Courts have scrutinized requests for disclosure of names and home addresses contained in public records, because individuals have a substantial privacy interest in their home addresses and in preventing unsolicited and unwanted mail. (*Department of Defense, supra,* 510 U.S. at pp. 500-501 [109 S.Ct. at pp. 1015-1016] ["We are reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions."].)

In determining whether the public interest in nondisclosure of individuals' names and addresses outweighs the public interest in disclosure of that information, courts have evaluated whether disclosure would serve the legislative purpose of " 'shed[ding] light on an agency's performance of its statutory duties.' " (*Voinche* v. *F.B.I.* (D.D.C. 1996) 940 F.Supp. 323, 330 (hereafter *Voinche*).) Where disclosure of names and addresses would not serve this purpose, denial of the request for disclosure has been upheld. (*Department of Defense, supra,* 510 U.S. at p. 502 [114 S.Ct. at p. 1016]

["privacy interest of bargaining unit employees in nondisclosure of their home addresses substantially outweighs the negligible FOIA-related public interest in disclosure"]; *Painting Industry of Hawaii* v. *Dept. of Air Force* (9th Cir. 1994) 26 F.3d 1479, 1486 (hereafter *Painting Industry*) [no disclosure of names and addresses on employee payroll when disclosure only marginally useful in uncovering " 'what the government is up to' "]; *Voinche*, *supra*, 940 F.Supp. at p. 330 [workings of agencies not better understood by disclosure of identity of employees and private citizens who wrote to government officials]; *Local 1274, Ill. Fed. of Teachers* v. *Niles* (1997) 287 Ill.App.3d 187, 193 [222 Ill.Dec. 602, 678 N.E.2d 9, 13] [names and addresses of school district parents had "nothing to do with the duties of any public servant"].) Courts have also recognized that the public interest in disclosure is minimal, even when the requester asserts that personal contact is necessary to confirm government compliance with mandatory duties, where the requester has alternative, less intrusive means of obtaining the information sought. (See, e.g., *Painting Industry*, *supra*, 26 F.3d at p. 1485.)

However, where the disclosure of names and addresses is necessary to allow the public to determine whether public officials have properly exercised their duties by refraining from the arbitrary exercise of official power, disclosure has been upheld. (*CBS*, *supra*, 42 Cal.3d at p. 656 [revealing identity of concealed weapons permit holders permits public ascertainment of whether law applied evenhandedly]; *New York Times* v. *Superior Court*, *supra*, 52 Cal.App.4th at pp. 104-105 [disclosure of names of sheriff's deputies who fired fatal shot permits check against arbitrary exercise of official power]; *New York Times* v. *Superior Court*, *supra*, 218 Cal.App.3d at p. 1585 [disclosure of excess water users will ensure individuals do not receive special privileges].)

2. *Disclosure of the Identity of Complainants*

The privacy rights of those who complain to their government have also been recognized when courts evaluate requests for disclosure of personal information from public records. With regard to complaints of criminal wrongdoing, it has been stated, "Complainants often demand anonymity. The prospect of public exposure discourages complaints and inhibits effective enforcement." (*Black Panther Party*, *supra*, 42 Cal.App.3d at p. 653.) In determining that letters of complaint to the Federal Aviation Agency about a pilot were exempt from disclosure under the FOIA, the federal appeals court noted the President's statement when signing the FOIA into law: " 'A citizen must be able in confidence to complain to his Government and to provide information . . . . I know the sponsors of this bill recognize these important interests and intend to provide for both the need of the public for access to information and the need of Government to protect certain categories of

information.'" (*Evans* v. *Department of Transportation of United States* (5th Cir. 1971) 446 F.2d 821, 824, fn. 1.)

Similarly, a New York state appeals court judge remarked, "I do not believe that a citizen who complains to or inquires of his government expects that his correspondence revealing among other things his identity and home address will come into the hands of private entrepreneurs who seek to solicit his business." (*Goodstein* v. *Shaw* (1983) 119 Misc.2d 400 [463 N.Y.S.2d 162] (hereafter *Goodstein*) [denying under New York Freedom of Information Law an attorney's request for names and addresses of complainants to the state's division of human rights].) This decision and others recognize that disclosure of names and addresses of complainants may have the indirect effect of creating a specialized mailing list which is then available to anyone for any purpose. (*Goodstein, supra,* 119 Misc.2d at pp. 400-401 [463 N.Y.S.2d at pp. 162-163]; see also *Center for Auto Safety* v. *NHTSA* (D.D.C. 1993) 809 F.Supp. 148, 149-150 (hereafter *Center for Auto Safety*).)

In *Center for Auto Safety,* 809 F.Supp. 148, the privacy rights of complainants under the FOIA were considered by a federal district court. In this case, a private consumer group called the Center for Auto Safety requested disclosure under FOIA of the names and addresses of individuals who had complained to the National Highway Traffic Safety Administration (NHTSA) about auto safety problems. The Center for Auto Safety argued that the government agency's summaries of complaints were not sufficient, because the group needed to contact the complainants individually. (*Center for Auto Safety, supra,* 809 F.Supp. at p. 149.)

The court upheld NHTSA's refusal to disclose the names and addresses of the complainants, on grounds of the public interest in the rights of citizens to complain to their government in privacy and to be left alone. (*Center for Auto Safety, supra,* 809 F.Supp. at p. 150.) The court concluded, "Since the consequences of a general mailing list of complainants concerned with auto safety are clearly and foreseeably intrusive, complainants will have forfeited a degree of privacy because they chose to alert the proper agency of government to circumstances suggesting tighter auto safety controls . . . a specialized list [of complainants], by its very nature, will be used by individuals and concerns that do not necessarily share the same concerns of those listed but see a commercial or private advantage in exploiting them." (*Id.* at p. 149.) Further, the court found that no ascertainable public interest would be served by disclosure of the identities of the auto safety complainants, and therefore the public interest in disclosure was outweighed by the privacy interests of the complainants. (*Id.* at p. 150.)

As discussed below, application of the balancing test in the present case also compels the conclusion that the public interest in protecting the privacy interests of the complainants outweighs the public interest in disclosure.

### D. *The Public Interest in Nondisclosure of Airport Noise Complainants' Personal Information Clearly Outweighs the Public Interest in Disclosure Under the Particular Facts of This Case*

██ While no appellate courts have addressed the issue of whether a city must disclose the names, addresses, and telephone numbers of airport noise complainants, the California Attorney General has issued an opinion on the issue. (78 Ops.Cal.Atty.Gen. 103 (1995).) Utilizing the balancing test for the section 6255 catchall exception, the Attorney General concluded, ". . . the names, addresses and telephone numbers of persons who have filed noise complaints concerning the operations of a city airport are subject to public disclosure unless the city can establish in the particular circumstances that the public interest served by not making the information public clearly outweighs the public interest served by disclosure." (78 Ops.Cal.Atty.Gen., *supra*, at p. 110.) We agree that disclosure of the names, addresses, and telephone numbers of airport noise complainants is determined by application of the section 6255 balancing test.

City contends that the trial court erred in ordering disclosure, because City prevails when the section 6255 balancing test is properly applied. In City's view, the public interest in protecting airport noise complainants' privacy outweighs the Mercury News's argument that disclosure is in the public interest. While City acknowledges that there is a keen public interest in airport noise, City asserts that disclosure of complainants' personal information will not assist the public to determine if City is properly performing its state-mandated noise monitoring functions. Instead, City believes that its ability to perform its duties with respect to airport noise will be harmed by disclosure of complainants' identities, because, as shown by the activities and correspondence of groups such as Aircraft Pilots, disclosure will have a chilling effect and reduce the number of complaints.

In opposition, the Mercury News argues two main points: (1) City has not met its burden to show a clear overbalance on the side of confidentiality; and (2) City's arguments of a chilling effect on citizen complaints are based on speculation, as City lacks evidence of any citizen actually being harassed or deterred from making a complaint as a result of the disclosure of his or her name, address, and telephone number. Specifically, the Mercury News argues that airport noise is a matter of important public interest, and the public is entitled to determine whether city is meeting its obligations under state law to handle airport noise complaints. According to the Mercury News, it is only by obtaining the identity of airport noise complainants that the public and the media can ascertain whether city officials are performing their duties, since "the validity of those complaints cannot be evaluated because secrecy prevents contact of complainants in order to verify the

complaints and learn more about their concerns. The dry statistics offered by the City are not enough. The public is entitled to raw data, i.e., information that can be confirmed through interviews and observation."

Additionally, the Mercury News contends that the public would benefit from disclosure of complainants' identity, because disclosure would deter false or frivolous complaints. The Mercury News asserts as well that the complainants' privacy interest is minimal because complainants provide their names, addresses, and telephone numbers voluntarily and without any guarantees of confidentiality.

In response, City contends that the Mercury News's own arguments reveal that disclosure of the identity of airport noise complainants will have a chilling effect on complaints, because the newspaper's purpose in obtaining their identity is to contact complainants directly. According to City, citizens who wish to make an airport noise complaint will have no choice but "to remain silent while maintaining their privacy, or else register their complaints at the risk of being questioned in their homes by the press or other persons as to whether they are telling the truth." Also, City points out that the Mercury News has alternative means of contacting airport noise complainants other than by invading their privacy. City suggests that the newspaper could contact and interview complainants by locating them at city council meetings, through anti-airport noise community groups and their Web sites, or by canvassing the city areas in which noise complaints are most concentrated.

We agree with City that, applying the section 6255 balancing test to the particular facts of this case, the public interest in the nondisclosure of airport complainant's personal information clearly outweighs the public interest in disclosure. Therefore, the trial court erred in ordering City to disclose the names, addresses, and telephone numbers of the January 1998 airport noise complainants. In so ruling, we recognize the Mercury News's argument that it is in the public interest for the newspaper to be able to contact the complainants individually in order to confirm that their complaints have been properly recorded and reported by City as required by its state noise variance. We also understand the Mercury News's implied argument that City may be motivated to underreport airport noise complaints and thereby prevent any negative impact on airport expansion.

However, in this particular case, City discloses a substantial amount of detailed information about public complaints of airport noise. This information provides the public with data to analyze City's performance of its duty to record, investigate and report airport noise complaints. We also find that airport noise complainants have a significant privacy interest in their names,

addresses, and telephone numbers as well as in the fact that they have made a complaint to their government, and that disclosure of this information would have a chilling effect on future complaints.

Courts have not required evidence that an individual was actually deterred from making a complaint by the prospect of public disclosure. Instead, courts have based their recognition of the likely effect of disclosure on human experience. (See, e.g., *Black Panther Party*, *supra*, 42 Cal.App.3d at p. 653 ["The prospect of public exposure discourages complaints."]; *Times-Mirror*, *supra*, 53 Cal.3d at p. 1345 ["To disclose every private meeting or association of the Governor and expect the decisionmaking process to function effectively, is to deny human nature and contrary to common sense and experience." (italics omitted)]; *Center for Auto Safety*, *supra*, 809 F.Supp. at p. 149 ["[T]he consequences of a general mailing list of complainants concerned with auto safety are clearly and foreseeably intrusive."].) Therefore, ". . . like the United States Supreme Court, our perception that 'those who expect public dissemination of their remarks may well temper candor with a concern for appearance,' is based upon 'human experience' . . . ." (*California First Amendment Coalition* v. *Superior Court* (1998) 67 Cal.App.4th 159, 173 [78 Cal.Rptr.2d 847], quoting *United States* v. *Nixon* (1974) 418 U.S. 683, 705 [94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039].)

Accordingly, it may be fairly inferred, on the basis of human experience, that it is likely that public disclosure of airport complainants' names, addresses and telephone numbers will have a chilling effect on the number of complaints made. Public disclosure will subject the complainants to the loss of confidentiality in their complaints, and also to direct contact by the media and by persons who wish to discourage complaints. It also may be presumed that a reduction in airport noise complaints will impede City in its ability to comply with its airport noise monitoring duties.

In contrast, the public interest in disclosure of personal information about airport noise complainants is minimal, because City has made available all the information it has concerning airport noise complaints, except for the names, addresses, and telephone numbers of the complainants. The information provided by City in its monthly noise report and data base printout is extensive, and indicates the date, time and nature of each complaint, as well as the city area where the complaint originated. Not only does the monthly noise report provide a comprehensive overview of City's performance of its state-mandated duty to report airport noise complaints, the report also provides the Mercury News with information which will aid it in further investigation of the complaints.

As City notes, the Mercury News has alternative means of contacting and interviewing the complainants other than by intruding on their privacy

through forced disclosure of their identities from government records. The newspaper may directly contact complainants who have made their identities public, for example, by appearing at city council meetings, by joining anti-airport noise community groups, or by disclosing themselves on the group's Web site. The Mercury News may also identify from the monthly noise reports those neighborhoods from which complaints originate, and canvass those neighborhoods for complainants who are willing to be interviewed.

We recognize that a mailing and telephone list of airport complainants would greatly facilitate the Mercury News's investigation. However, facilitating research is not the purpose of public access to government records. (See *Reporters Committee, supra*, 489 U.S. at p. 772 [109 S.Ct. at p. 1481].) While media research may serve the public interest by accessing public records which show how the government conducts its business, investigations at the expense of individual privacy cannot be allowed for the sole purpose of media convenience. Where, as here, the media and members of the public can obtain the identity of complainants through less intrusive means, disclosure of complainants' personal information is likely to chill future complaints. Because alternative information is available regarding the city's complaint-related operations, the public interest in protecting the privacy of complainants clearly outweighs the public interest in disclosure of their names, addresses and telephone numbers from government records.

## IV. Disposition

Let a peremptory writ of mandate issue directing respondent court to vacate its amended order and judgment of September 24, 1998, and to enter a new and different order denying the San Jose Mercury News's petition for writ of mandate. Each party is to bear its own costs in this original proceeding.

Premo, J., and Elia, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied December 1, 1999. Mosk, J., was of the opinion that the petition should be granted.