Filed 4/18/14 (second of two modifications; first mod. and unmodified opn. follow)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF SAN JOSE et al., | H039498 |
| Petitioners, | (Santa Clara County Super. Ct. No. 1-09-150427) |
| v. | ORDER |
| THE SUPERIOR COURT OF SANTA CLARA COUNTY, | |
| Respondent, | |
| TED SMITH, etc. | |
| Real Party in Interest. | |

THE COURT:

The above captioned opinion, filed on March 27, 2014, is hereby modified as follows:

Page 25, last paragraph, delete the following:   "Costs in this original proceeding are awarded to petitioners."

There is no change in the judgment.

The petition for rehearing is denied.

_____
ELIA, J.


_____         _____
RUSHING, P. J.                                             PREMO, J.

Filed 4/10/14  (Unmodified opinion attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF SAN JOSE et al., | H039498 |
| Petitioners, | (Santa Clara County Super. Ct. No. 1-09-150427) |
| v. | ORDER |
| THE SUPERIOR COURT OF SANTA CLARA COUNTY, | |
| Respondent, | |
| TED SMITH, | |
| Real Party in Interest. | |

THE COURT:

The above captioned opinion, filed on March 27, 2014, is hereby modified as follows:

Page 6, second full paragraph, lines nine-eleven, delete the following:  "*Federated University Police Officers Association v. Superior Court* (2013) 218 Cal.App.4th 18, 27 [names of police officers using pepper spray on protesters not protected under any CPRA exemption category] and."

There is no change in the judgment.

_____
ELIA, J.

_____           _____
RUSHING, P. J.                                              PREMO, J.

Filed 3/27/14 Unmodified opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF SAN JOSE et al., | H039498 |
| Petitioners, | (Santa Clara County Super. Ct. No. 1-09-150427) |
| v. | |
| THE SUPERIOR COURT OF SANTA CLARA COUNTY, | |
| Respondent, | |
| TED SMITH, | |
| Real Party in Interest. | |

In this proceeding the City of San Jose (City), the City's mayor, and 10 city council members seek a writ of mandate or prohibition overturning an order that denied their summary judgment motion and granted that of real party Ted Smith, plaintiff in the underlying action.[1] The summary judgment ruling granted declaratory relief to Smith, who had asserted the right to inspect specified written communications (including e-mail and text messages) sent or received by public officials and employees on their private electronic devices using their private accounts. The issue presented is whether those

---

[1] Also named in Smith's complaint were the San Jose Redevelopment Agency and Harry Mavrogenes, the agency's executive director. The Redevelopment Agency, however, was later dissolved and succeeded by the City itself.

private communications, which are not stored on City servers and are not directly accessible by the City, are nonetheless "public records" within the meaning of the California Public Records Act (CPRA or the Act) (Gov. Code, § 6250 et seq.).[2]  We conclude that the Act does not require public access to communications between public officials using exclusively private cell phones or e-mail accounts.  We will therefore grant the requested relief.

*Background*

The CPRA defines "public records" to include any writing relating to the public's business if it is "prepared, owned, used, or retained by any state or local agency." (§ 6252, subd. (e).)  In June 2009, Smith submitted a request to the City, seeking 32 categories of public records involving specified persons and issues relating to downtown San Jose redevelopment.   The City complied with all but four categories of requests, namely items 27-30.  These four requests were essentially for "[a]ny and all voicemails, emails or text messages sent or received on private electronic devices used by Mayor Chuck Reed or members of the City Council, or their staff, regarding any matters concerning the City of San Jose, including any matters concerning Tom McEnery, John McEnery IV, Barry Swenson, Martin Menne, Sarah Brouillette, or anyone associated with Urban Markets LLC or San Pedro Square Properties."  The City disclosed responsive non-exempt records sent from or received on private electronic devices using these individuals' *City* accounts, but not records from those persons' private electronic devices using their private accounts (e.g., a message sent from a private gmail account using the person's own smartphone or other electronic device).  The City took the position that these items were not public records within the meaning of the CPRA.

---

[2]  Further statutory references are to the Government Code except as otherwise indicated.

Smith brought this action for declaratory relief[3] in August 2009, seeking a judgment entitling him to disclosure of the disputed information under the CPRA. The parties filed cross-motions for summary judgment, which were heard by the superior court in March 2013. Petitioners argued that messages sent from or to private accounts using private electronic devices are not "public records" under the CPRA, and that individual officials and employees are not included within the definition of "public agency" under the Act. In their view, only those records "within the public entity's custody and control" would be subject to disclosure under the Act.

Smith maintained that communications prepared, received, or stored on City officials' private electronic devices are public records under the CPRA, since local agencies "can only act through their officials and employees." Those officials and employees, he argued, are acting on behalf of the City, and therefore their disclosure obligations are "indistinguishable" from those of the City.

In its March 19, 2013 order, the superior court rejected petitioners' arguments, noting that "there is nothing in the [CPRA] that explicitly excludes individual officials from the definition of 'public agency,' " and a city is an " 'artificial person' " that can " 'only act through its officers and employees.' " Thus, a record that is "prepared, owned, used, or retained" by an official is "prepared, owned, used, or retained" by the City. The court further reasoned that if petitioners' interpretation were accepted, "a public agency could easily shield information from public disclosure simply by storing it on equipment it does not technically own." Accordingly, the court denied petitioners' motion for summary judgment and granted that of Smith.

Petitioners then requested a writ of mandate or prohibition in this court. We issued a stay of the lower court's order and invited preliminary opposition. Smith chose

---

[3] The complaint was titled "Complaint for Declaratory and Injunctive Relief," but only one cause of action was stated, for a judicial declaration of the parties' rights and duties.

not to submit such opposition.  Upon the issuance of an order to show cause, however, Smith filed a return.

*Discussion*

The issue before us is whether the definition of "public records" in section 6252, subdivision (e), encompasses communications "prepared, owned, used, or retained" by City officials and employees on their private electronic devices and accounts. Underlying this dispute is the question of whether those officials and employees are "agents" of the City, as Smith contends.  Petitioners, together with the League of California Cities (League) as amicus curiae, renew their argument that private communications are excluded from the statutory definition of "public records" under the CPRA.  Smith, joined by representatives of the news media as amici curiae,[4] maintains that individual City officials and employees must be deemed public agencies, thus making their communications public records regardless of what devices and accounts are used to send and receive those messages.

*1. Standard of Review*

An order directing disclosure by a public official under the CPRA is not appealable, but it is immediately reviewable through a petition to the appellate court for issuance of an extraordinary writ.  (§ 6259, subd. (c).)  "The purpose of the provision limiting appellate review of the trial court's order to a petition for extraordinary writ is to prohibit public agencies from delaying the disclosure of public records by appealing a trial court decision and using continuances in order to frustrate the intent of the Act. [Citation.]  The Legislature's objective was to expedite the process and make the appellate remedy more effective."  (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419,

---

[4] Arguing as amici curiae in opposition to the petition are the First Amendment Coalition, California Newspaper Publishers Association, Los Angeles Times Communications LLC, McClatchy Newspapers, Inc., and California Broadcasters Association.

4

426-427.) Because this petition calls for interpretation and application of statutory provisions to undisputed facts, our review is de novo. (*County of Los Angeles v. Superior Court* (2012) 211 Cal.App.4th 57, 62; *Lorig v. Medical Board* (2000) 78 Cal.App.4th 462, 467; see also *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [ruling on summary judgment reviewed independently].)

*2. Policy Objectives of the CPRA*

The CPRA was modeled on the federal Freedom of Information Act (FOIA) (5 U.S.C. § 552). Their common purpose "is to require that public business be conducted 'under the hard light of full public scrutiny' [citation], and thereby 'to permit the public to decide *for itself* whether government action is proper.' [Citation.] . . . For both the FOIA and the Act, 'disclosure, not secrecy, is the dominant objective.' [Citation.]" (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1350; *City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1016.)

In enacting the CPRA the Legislature expressly declared that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.) "Thus, the Act was passed 'to ensure public access to vital information about the government's conduct of its business.' " (*City of San Jose v. Superior Court, supra,* 74 Cal.App.4th at p. 1016, quoting *CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 656; *Gilbert v. City of San Jose* (2003) 114 Cal.App.4th 606, 610.) As the California Supreme Court has explained, "[o]penness in government is essential to the functioning of a democracy. 'Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process.' " (*International Federation of Professional and Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 328-329 (*International Federation*), quoting *CBS, Inc. v. Block, supra,* 42 Cal.3d at p. 651.)

5

"California voters endorsed that policy in 2004 by approving Proposition 59, which amended the state constitution to explicitly recognize the 'right of access to information concerning the conduct of the people's business' and to provide that 'the writings of public officials and agencies shall be open to public scrutiny.' (Cal. Const., art. 1, § 3, subd. (b)(1))." (*County of Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301, 1320; *International Federation, supra,* 42 Cal.4th at p. 329.) "Subdivision (b)(2) [of California Constitution, article I, section 3] provides guidance on the proper construction of statutes affecting this right of access: 'A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access.' " (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 166.)

Although the term "public records" encompasses a wide range of communications, disclosure "has the potential to impact individual privacy." (*City of San Jose v. Superior Court*, *supra*, 74 Cal.App.4th at p. 1016.) The Legislature acknowledged this fact by stating in section 6250 that it is "mindful of the right of individuals to privacy." Accordingly, section 6254 provides a number of exemptions that " 'protect the privacy of persons whose data or documents come into governmental possession.' [Citation.]" (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1282 [holding police officer's disciplinary records not subject to disclosure under section 6254, subdivisions (c) and (k) and Penal Code section 832.7; but see *Federated University Police Officers Association v. Superior Court* (2013) 218 Cal.App.4th 18, 27 [names of police officers using pepper spray on protesters not protected under any CPRA exemption category] and *International Federation, supra,* 42 Cal.4th 319, 346 [peace officers' names and salary information were not protected from CPRA disclosure under exemption of section 6254, subd. (c), or by Penal Code sections 832.7 and 832.8].) "Thus, the express policy declaration at the beginning of the Act 'bespeaks legislative concern for individual privacy as well as disclosure.' [Citation.] 'In the spirit of this declaration, judicial

6

decisions interpreting the Act seek to balance the public right to access to information, the government's need, or lack of need, to preserve confidentiality, and the individual's right to privacy. . . .' [Citation.]" (*Copley Press, Inc. v. Superior Court*, *supra*, 39 Cal.4th at p. 1282.) Likewise, the right of access declared in article I, section 3(b)(1), of the California Constitution is qualified by the assurance that this right of access does not supersede an individual's right of privacy.[5]

Petitioners argue that the Legislature has not expanded the reach of the Act to personal devices and accounts because it recognizes the privacy rights of this state's citizens: "A requirement that the government search individuals' personal computers and other devices for information potentially responsive to [CPRA] requests would run counter to California's strong policy favoring privacy." Smith counters that officials "lose any expectation of privacy" when they choose "to send and receive messages regarding public business from their personal electronic devices and accounts."

The League acknowledges that public officials and employees have a diminished expectation of privacy, as illustrated by statutory duties to report certain personal financial information (§ 87200 et seq.) and the Brown Act requirement that legislative meetings be open and public (§ 54953). The League notes, however, that the Brown Act (section 54950, et seq.)— which "serves the same democratic purposes" as the CPRA (*International Federation*, *supra*, 42 Cal.4th at p. 333, fn. 6) -- permits private conversations about the public's business by fewer than a majority of its members outside of a public meeting (§ 54952.2, subd. (a)), and it does not apply to "individual contacts or conversations between a member of a legislative body and any other person that do not violate subdivision (b)." (§ 54952.2, subd. (c)(1).) In addition, the League reasons, the

---

[5] Article I, section 3, subdivision (b)(3), states, in pertinent part, "Nothing in this subdivision supersedes or modifies the right of privacy guaranteed by Section 1 or affects the construction of any statute, court rule, or other authority to the extent that it protects that right to privacy . . . ." (Cal. Const. art. I, § 3(b)(3).)

7

ability to discuss public issues privately and confidentially allows dissident members of a legislative body to air "unpopular views" and develop "strategies for challenging the status quo or the powers that be." The superior court's ruling, by contrast, would destroy "this carefully crafted private space" and "could have a chilling effect on citizens who wish to exercise their constitutional rights to instruct their representatives and petition government for redress of grievances." The League also suggests that the trial court's ruling is potentially incongruous with the Brown Act; for example, "a meeting between a public official and a constituent that would not be directly subject to public review under the Brown Act could be indirectly subject to public review under the Public Records Act, if the public official made notes of the meeting. This cannot be the rule. The twin pillars of open government law in California, the Public Records Act and the Brown Act, must be interpreted so as to be reasonably consistent with one another." Finally, addressing the superior court's concern that a city "could easily shield information from public disclosure simply by storing it on equipment it does not technically own," the League contends that we must presume under Evidence Code section 664 that the "public officials are conducting City business in the public's best interest, and not willfully dodging applicable laws and regulations."

We observe, however, that in recognizing "the right of individuals to privacy" in section 6250, the Legislature did not distinguish between the privacy right of City officials and that of third parties whose personal information may be disclosed when records are accessed. (Compare *City of San Jose v. Superior Court, supra*, 74 Cal.App.4th at pp. 1018-1025 [balancing test under catch-all exception of section 6255, subd. (a), favors privacy interests of citizens complaining about airport noise over public interest in disclosure] and *Regents of University of California v. Superior Court* (2013) 222 Cal.App.4th 383, 399) [public entity has no obligation to obtain fund information from private investment firms] with *International Federation, supra,* 42 Cal.4th 319, 346 [peace officers' names and salary information not protected from CPRA disclosure under

8

exemption of section 6254, subd. (c), or by Penal Code sections 832.7 and 832.8]; cf. *Sander v. State Bar of California* (2013) 58 Cal.4th 300, 326-327 [information in state bar admissions database accessible if privacy of applicants can be protected and no legitimate public interest outweighs public interest in disclosure].)

Both the City and the League supplement their privacy concerns with practical considerations. Petitioners suggest that if local agencies were required to search the personal electronic accounts of their employees, "the burden and cost would be overwhelming." Indeed, petitioners suggest, "without the requisite custody or control of such records, it is difficult to imagine how the City would be able to implement such searches if employees declined to cooperate." The League likewise emphasizes that without access to and control over private messaging accounts and electronic devices, a public agency has no "viable, legal means of searching for and producing private documents of its employees and officials." The superior court's interpretation is unworkable, the League argues, because a records request would require the City to conduct an active search not only of devices and accounts stored in its system or under its control, but also of all private computers, phones, tablets, and other electronic devices of its employees and officials. And those searches, the League points out, would intrude into private conversations with family members or friends that happen to include some discussion of a public issue. As the League sees it, "[n]either the Legislature nor the electorate has demonstrated an intent that the Act reach those purely private communications."

In defending the lower court's ruling Smith and the media representatives also rely on policy objectives. They emphasize that section 6252, subdivision (e), must be construed broadly "if it furthers the people's right of access, and narrowly construed if it limits the right of access." (Cal. Const., art. I, § 3, subd. (b)(2).) The media suggest that petitioners' interpretation of "public records" is unreasonable and arbitrary because it would allow officials to "conceal evidence of error or malfeasance on a whim by storing

9

information relating to the public's business on their personal accounts or devices. They could also distort the truth by storing only records that tell a favorable tale on accounts or devices owned by a state or local agency." Smith adds, relying on *Commission On Peace Officer Standards And Training v. Superior Court* (2007) 42 Cal.4th 278 (*CPOST*), "If petitioners' interpretation were to hold sway, an email, text or other communication concerning the public's business that was stored solely on a City Council member's cell phone would be exempt from disclosure. And yet, if the same email, text, or communication was [*sic*] stored on a City computer server, then it would be a public record. Petitioners' attempt to make the 'public' nature of a record dependent upon its storage location, rather than its content, is completely arbitrary and patently unreasonable."

None of the parties' policy-based arguments informs our analysis of whether the requested communications are public records within the meaning of section 6252. We are bound to interpret statutory language as written and avoid any encroachment on the province of the Legislature to declare public policy. As the Supreme Court has reminded us, "the Legislature, and not the courts, is vested with the responsibility to declare the public policy of the state. [Citations.]" (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 71-72; see also *Copley Press, Inc. v. Superior Court, supra,* 39 Cal.4th at p. 1299 [it is for the Legislature, not the courts, to weigh competing policy considerations].) Indeed, " ' "public policy" as a concept is notoriously resistant to precise definition, and . . . courts should venture into this area, if at all, with great care and due deference to the judgment of the legislative branch' in order to avoid judicial policymaking." (*Green v. Ralee Engineering Co, supra,* 19 Cal.4th at p. 76; *Silo v. CHW Medical Foundation* (2002) 27 Cal.4th 1097, 1104.) Whether personal accounts and devices of an individual must be deemed accessible for purposes of a CPRA request must be determined, if possible, by reading the language of the statute itself.

*3. The Scope of "Public Records"*

Under the CPRA, "[p]ublic records are open to inspection at all times during the office hours of the state or local agency and every person has a right to inspect any public record, except as hereinafter provided." (§ 6253, subd. (a).) As noted earlier, the term "public records" is defined in section 6252, subdivision (e), to include any writing relating to the public's business if it is "prepared, owned, used, or retained by any state or local agency."[6] "This broad definition is designed to protect the public's need to be informed regarding the actions of government . . . ." (*Poway Unified School Dist. v. Superior Court (Copley Press)* (1998) 62 Cal.App.4th 1496, 1501; accord, *California State University v. Superior Court* (2001) 90 Cal.App.4th 810, 824.) The Act defines a "local agency" to include "a county; city, whether general law or chartered; city and county; school district; municipal corporation; district; political subdivision; or any board, commission or agency thereof; other local public agency; or entities that are legislative bodies of a local agency pursuant to subdivisions (c) and (d) of Section 54952." (§ 6252, subd. (a).)

In order to apply section 6253 in light of the expressed intent of section 6250 to ensure access to information relating to public business, we must first determine whether a written communication[7] transmitted to or from a city official's private electronic device using his or her private account is a "public record" within the meaning of the CPRA. Both sides submit cogent arguments in support of their respective positions. Petitioners,

---

[6] A "writing" is defined in section 6252, subdivision (g) as "any handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored."

[7] No party disputes that a "writing," as used in the Act, encompasses e-mail and text messages. (§ 6252, subd. (g).)

11

joined by the League as amicus curiae, rely on the exact language of section 6252, which applies the disclosure mandate to writings "prepared, owned, used, or retained" by a local or state *agency*, not by the agency's officials or employees. Petitioners argue that the superior court "encroached on the province of the Legislature" by expanding the reach of the statute to records of individual council members rather than those "prepared, owned, used, or retained" by the City itself. The League also argues that section 6253.9, which prescribes disclosure procedures for electronically stored information,[8] "unmistakably envisions a system of access to electronic records that are in the possession of the agency, not on the home computer of a city council member. It bolsters the conclusion that the Act means what it says in limiting the definition of public records to records 'prepared, owned, used, or retained' by the local agency."

As he did below, Smith asserts that because "local agencies are inanimate bodies, they can only act through their officials and employees; therefore, records 'prepared, owned, used, or retained' by a 'local agency' presumptively includes records 'prepared, owned, used, or retained' by City officials and employees." Thus, in Smith's view, the City and its "agents" -- that is, the individual members of San Jose's city council and their staff -- are "indistinguishable under these circumstances." This was the reasoning adopted by the superior court in its ruling.

Close examination of Smith's argument reveals its logical weakness. Even if we accept the first premise, that a local agency can act only through its officials, it does not follow that every act of an official is necessarily an act of the agency. Smith further

---

[8] Section 6253.9 sets forth specific procedures for complying with its overall mandate, which states: "Unless otherwise prohibited by law, any agency that has information that constitutes an identifiable public record not exempt from disclosure pursuant to this chapter that is in an electronic format shall make that information available in an electronic format when requested by any person and, when applicable, shall comply with the following . . . ." (Gov. Code, § 6253.9, subd. (a).)

12

asserts, quoting *San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762, 774 (*San Gabriel*) that " '[a]ny record required by law to be kept by an officer, or which he keeps as necessary or convenient to the discharge of his official duty, is a public record.' " This point, taken from *San Gabriel* out of context, merely begs the question of whether the information sought is a public record.

Determining the scope of "public records" must be made in light of the constitutional mandate of article I, section 3, and the intent expressed by the Legislature in the statutory scheme, particularly section 6250.  "When we interpret a statute, '[o]ur fundamental task  . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend."  (*Sierra Club*, *supra*, 57 Cal.4th at pp. 165-166; *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)  We remain mindful, however, of the " 'strong public policy of the people's right to information concerning the people's business (Gov. Code, § 6250), and the constitutional mandate to construe statutes limiting the right of access narrowly (Cal. Const., art. I, § 3, subd. (b)(2)).' "  (*Sierra Club*, *supra*, 57 Cal.4th at p. 166.)  Accordingly, if there is ambiguity in the meaning or intent of the statutory language, "the California Constitution requires us to 'broadly construe[ ]' the PRA to the extent 'it furthers the people's right of access' and to 'narrowly construe[ ]' the PRA to the extent 'it limits the right of access.' (Cal. Const., art. I, § 3, subd. (b)(2).)"  (*Ibid*.)

Guided by these principles, we examine the language of section 6252—specifically, its definition of "public records" as "any writing containing information relating to the conduct of the public's business *prepared, owned, used, or retained by any*

13

*state or local agency* regardless of physical form or characteristics." (§ 6252, subd. (e), italics added.) If a "local agency" and its officials are, as Smith portrayed them below, "one and the same," then any writing prepared, owned, used, or retained by the official is deemed that of the agency itself. The statute's definition of "local agency," however, does not mention individual members or representatives of any public body; it refers to government bodies themselves, including counties, cities, "any board, commission or agency thereof; other local public agency; or entities that are legislative bodies of a local agency pursuant to subdivisions (c) and (d) of Section 54952."[9] The plain language of this provision thus denominates the legislative body as a whole; it does not appear to incorporate individual officials or employees of those entities. Had the Legislature intended to encompass such individuals within the scope of "public records," it could easily have done so. (Cf. *D'Amato v. Superior Court* (2008) 167 Cal.App.4th 861, 873 [had Legislature intended section 1090 proscription against financial interests in contracts to apply to entire board, it would have worded statute differently].) And, in fact, it did so in defining "state agency" to include "officer." (§ 6252, subd. (f).)

We therefore cannot agree with Smith that individual city council members and their staff must be considered equivalent to the City for purposes of providing public access to their writings on public business. Because it is the *agency*—here, the City— that must prepare, own, use, or retain the writing in order for it to be a public record,

---

[9] Section 54952 defines "Legislative body" in part as "(a) The governing body of a local agency or any other local body created by state or federal statute. [¶] (b) A commission, committee, board, or other body of a local agency, whether permanent or temporary, decisionmaking or advisory, created by charter, ordinance, resolution, or formal action of a legislative body. However, advisory committees, composed solely of the members of the legislative body that are less than a quorum of the legislative body are not legislative bodies, except that standing committees of a legislative body, irrespective of their composition, which have a continuing subject matter jurisdiction, or a meeting schedule fixed by charter, ordinance, resolution, or formal action of a legislative body are legislative bodies for purposes of this chapter."

14

those writings that are not accessible by the City cannot be said to fall within the statutory definition. The City cannot, for example, "use" or "retain" a text message sent from a council member's smartphone that is not linked to a City server or City account. Thus, relying on the plain meaning of the language used in section 6252, subdivisions (a) and (e), we believe that the CPRA does not extend its disclosure mandate to writings of individual city officials and employees sent or received on their private devices and accounts.

That city council members may conceal their communications on public issues by sending and receiving them on their private devices from private accounts is a serious concern; but such conduct is for our lawmakers to deter with appropriate legislation. It does not make a literal interpretation necessarily "arbitrary, unreasonable, and absurd," as Smith and the media contend. "It is our task to construe, not to amend, the statute. 'In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted . . . .' [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349; cf. *McLeod v. Parnell* (2012) 286 P.3d 509 [declining to depart from literal meaning of "public records" in Alaska's Public Records Act, as legislature may allow agency employees to decide what documents should be "preserved"].)

Smith, along with the media, cites *CPOST, supra,* 42 Cal.4th 278, for the assertion that "the location in which public records are stored does not diminish their public character." The media draw from *CPOST* the inference that "the Legislature meant to exclude from the definition of public records only writings 'totally devoid of reference to government activities' based on their content."

But *CPOST* does not assist us in interpreting the language of section 6252. In *CPOST*, the issue was whether the information sought by a newspaper was exempt from

15

*disclosure* under section 6254, not whether it met the definition of a public record under section 6252. Indeed, it was undisputed that the requested information was a public record; rather, it was the scope of "personnel records" as used in Penal Code sections 832.7 and 832.8 that was at issue. (*Id.* at p. 288.) It was in this context that the high court determined that it was "unlikely the Legislature intended to render documents confidential based on their location, rather than their content." (*Id.* at p. 291.) The Supreme Court rejected the appellate court's interpretation of "personnel records" in Penal Code section 832.8, because "[u]nder the Court of Appeal's interpretation, the circumstance that a document was placed into a file that also contained the type of personal or private information listed in the statute would render the document confidential, regardless of whether the document at issue was of a personal or private nature, and regardless of whether it was related to personnel matters." (*Id.* at p. 290.) In other words, the location of a document should not be the basis for determining whether personnel records may be withheld, because it would be too easy to shield unprotected information in a "file" that contains protected material. "Furthermore, if records are stored in a computer in electronic form, it would be difficult, if not impossible, to determine which records are contained in the same virtual 'file.' " (*Id.* at p. 291.) The Supreme Court concluded that "[b]ecause section 832.7 deems peace officer personnel records and information obtained from those records to be 'confidential,' they are exempt from disclosure under the Act." (*Id.* at p. 289.) As the court had no occasion in *CPOST* to determine the scope of "public records" under section 6252, subdivision (e)(2), Smith's and the media's reliance on that case is misplaced.

The media offer a similarly flawed argument, relying on *San Gabriel*, *supra*, 143 Cal.App.3d at page 774, for the proposition that the scope of "public record" excludes only personal information unrelated to the public's business. But that point goes to the public nature of the writing, which is not at issue here. (Cf. *Braun v. City of Taft* (1984) 154 Cal.App.3d 332, 340 [personnel records of city firefighter were public records, as

16

they "clearly related to the conduct of the City's business"].)  We are not concerned here with disclosure requests for messages of purely personal content because it is undisputed that the records sought relate to City business; thus, the issue is not properly framed as one of location vs. content.

Nor does the media's reliance on *International Federation, supra,* 42 Cal.4th 319 compel a different result.  In that case the Supreme Court held that peace officers' names and salary information were not protected from CPRA disclosure under exemption of section 6254, subdivision (c), or by the confidentiality provisions of Penal Code sections 832.7 and 832.8  The issue was not whether that information constituted a public record; the parties agreed that it did.  Instead, the court primarily addressed the question of whether any exemption applied under section 6254, subdivision (c), pertaining to " '[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy.' "  (*Id.* at p. 329.)

Both parties have cited *Flagg v. City of Detroit* (E.D. Mich. 2008) 252 F.R.D. 346 to support their positions.  In *Flagg*, a federal district court ruled that text messages exchanged by city officials and employees were not protected from civil discovery by the federal Stored Communications Act (18 U.S.C. § 2701 et seq.).  The messages were exchanged by means of text messaging devices issued to city officials and employees under the city's contract with Skytel, its service provider.  Because Skytel stored the messages under that contract, the city was presumed to have access to and control over them.  Notably, the discovery request was based on a federal rule of civil procedure which permitted the requesting party to inspect documents "in the responding party's possession, custody, *or control*."  (Fed. Rules Civ.Proc., rule 34, 28 U.S.C.)

Smith sets up a false comparison between the situation presented in *Flagg* and the facts before us, by arguing that here the City has control over its *employees* simply "by virtue of the parties' [*sic*] relationship."  There is no analogous control here.  Section 6252 contains no description of public records that includes the element of control.  Any

17

control the City has over its employees' behavior is not equivalent to control over, or even access to, the text messages and e-mail sent to and from its employees' private devices and accounts. Furthermore, it is noteworthy that the *Flagg* court regarded materials as under an agency's control if the agency had the *legal right* to obtain them. To apply that point here would make Smith's argument circular: we should deem the requested records to be within the City's control as a matter of law because it had the legal right to obtain them. Unquestionably, *Flagg* has no application here. (Cf. *MacKenzie v. Wales Tp.* (Mich. Ct. App. 2001) 635 N.W.2d 335, 339 [township may not avoid Freedom of Information Act obligation to release property tax roll information by contracting with outside preparer]; *Consolidated Irr. Dist. v. Superior Court* (2012) 205 Cal.App.4th 697, 710-711 [city lacked actual or constructive possession of records under § 6253(c) because it did not control the subconsultant files].)

Petitioners, on the other hand, cite *California State University, Fresno Assn., Inc. v. Superior Court* (*Fresno Assn*) (2001) 90 Cal.App.4th 810 to support their argument that the plain language of section 6252, subdivision (e), excludes communications from officials' personal accounts and devices. The issues before the Fifth District in that case are not comparable to those before us. In *Fresno Assn* a local newspaper sought from a state university and a university-affiliated nonprofit association records revealing the identity of those who had bought luxury suites in a new sports arena on the state university campus. The Fifth District determined that those records held by the university, a "state agency," were public records, because they were "unquestionably 'used' and/or 'retained' " within the meaning of section 6252, subdivision (e). (*Id.* at p. 825.) The association, on the other hand, was not a "state agency" for purposes of the Act. (*Ibid.*) The most we can derive from *Fresno Assn* is confirmation that the CPRA, like any statute, should be construed according to the language used by the Legislature, even when "our conclusion seems to be in direct conflict with the express purposes of the

18

CPRA—'to safeguard the accountability of government to the public. . . . ' " (*Id*. at p. 830.)

*Howell Ed. Ass'n, MEA/NEA v. Howell Bd. of Ed.* (2010) 789 N.W.2d 495, also cited by petitioners, is likewise not helpful. There the plaintiff, a teachers' union, sought a judgment declaring that both personal and union-related e-mail relating to union business did not constitute a public record under Michigan's FOIA. The appellate court held that personal e-mails were not rendered public records merely because they were stored or retained by the defendant board of education in its e-mail system. These messages were not subject to disclosure unless they were used "in the performance of an official function," as called for in the statute. (*Id*. at p. 500.) *Howell* has nothing to do with the issue presented here, whether a writing that undisputedly *is* related to official business is subject to disclosure when it is *outside* the public body's electronic communication system.

Some courts have considered whether a public official's messages using a private device are public records if made during official public meetings. In a Michigan township, a letter read aloud in a township meeting and incorporated into the minutes became a public record under that state's FOIA because it was "used  . . . in the performance of an official function." (*Walloon Lake Water System, Inc. v. Melrose Tp.* (Mich. Ct. App. 1987) 415 N.W.2d 292, 294 [163 Mich.App. 726, 730]; compare *Hopkins v. Duncan Tp.* (Mich. Ct. App. 2011) 812 N.W.2d 27, 33 [294 Mich.App. 401, 411] [board member's personal notes during meeting not a public record where they were never read into the minutes or used by the township board].) In *City of Champaign v. Madigan* (Ill. App. 2013) 992 N.E.2d 629, 639, the appellate court determined that text messages and e-mail sent or received by a city council member during council meetings constituted public records under Illinois's FOIA. The Illinois court accepted the city's argument that the individual council members were not themselves the "public body" within the meaning of the Act, where that legislation defined "public records" as

19

communications "pertaining to the transaction of public business, regardless of physical form or characteristics, having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." (5 Ill. Comp. Stat. Ann. 140/2, subd. (a).) The court noted that this definition did not include *members* of a public body, and that "[i]ndeed, an individual city council member, alone, cannot conduct the business of the public body." (*City of Champaign v. Madigan, supra,* 992 N.E.2d at p. 639.) The court then deviated from this line of reasoning by assuming that if the message is forwarded to enough council members to constitute a quorum, the individual member's messages become those of the entire "public body." (*Ibid.*) To hold otherwise, the court held, would "subvert the Open Meetings Act" and the FOIA "simply by communicating about city business during a city council meeting on a personal electronic device." (*Id*. at p. 640.)

The question of when a privately transmitted communication made during a public meeting becomes that of a "public body"—or in this case, a public "local agency"— is not presented in this writ proceeding. Smith did not confine his request to writings exchanged during city council meetings, but sought *all* communications transmitted during an unspecified period regarding "any matters concerning the City of San Jose," particularly those pertaining to the development of downtown San Pedro Square.

More comparable to the issue before us was the more general request submitted to a Pennsylvania township in *In re Silberstein* (Pa. Commw. Ct. 2011) 11 A.3d 629. In that case Stacey MacNeal requested electronic communications between citizens and commissioners serving on the township board. The township produced writings in its possession and control, but it did not consider those made on computers maintained solely by a commissioner. Like Smith, MacNeal argued that an elected official should not be permitted to shield public records relating to township activity by using a third-party e-mail address on a personal computer. Also like Smith, MacNeal reasoned that public officials "are agency actors and are subject to York Township control." (*Id*. at p.

20

632.)  The trial court, however, ruled that those communications were not "public records" under Pennsylvania's "Right-To-Know Law" (RTKL).[10]

The Commonwealth Court of Pennsylvania affirmed, holding that "a distinction must be made between transactions or activities of an agency which may be a 'public record' under the RTKL and the emails or documents of an individual public office holder.  As pointed out by the trial court, Commissioner Silberstein is not a governmental entity. He is an individual public official with no authority to act alone on behalf of the Township.  [¶]  Consequently, emails and documents found on Commissioner Silberstein's personal computer would not fall within the definition of record[,] as any record personally and individually created by Commissioner Silberstein would not be a documentation of a transaction or activity *of* York Township, as the local agency, nor would the record have been created, received or retained pursuant to law or in connection with a transaction, business or activity *of* York Township. In other words, unless the emails and other documents in Commissioner Silberstein's possession were produced with the authority of York Township, as a local agency, or were later ratified, adopted or confirmed by York Township, said requested records cannot be deemed 'public records' within the meaning of the RTKL as the same are not 'of the local agency.' " (*In re Silberstein, supra,* 11 A.3d at p. 633.)

Smith asserts that *Silberstein* is inapposite because the RTKL defined a "public record" as a non-exempt record *of* a commonwealth or local agency, and Silberstein lacked authority to act alone on behalf of the township.  That distinction is not helpful. The central premise of Smith's position is that the records of a City official are those of

---

[10] The RTKL defined a public record as a nonexempt record of a commonwealth or local agency.  (65 Pa. Stat. Ann. § 67.102.)  A "record" was information, "regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency . . . ." (*Ibid*.)

the City, so it makes no difference that the RTKL, and not the CPRA, uses the word "of" in defining "public record." Also unsupported is the implicit assumption that a member of the city council or other official does, in contrast to Silberstein, have authority to act alone on behalf of the City.[11]

We thus find no reason to reject the plain language of section 6252 under the rules of statutory construction or parallel authority from other states' versions of the FOIA. The writings sought by Smith were not "prepared, owned, used, or retained" by a "local agency" as called for by section 6252.

The First District, Division Two, reached the same conclusion recently in *Regents of University of California v. Superior Court, supra,* 222 Cal.App.4th 383. The issue in that case was whether Reuters America LLC (Reuters) was entitled to confidential information regarding investments made by the Regents of the University of California. The superior court recognized that the information was not directly owned, retained, or used by the university Regents, but it nonetheless granted the petition of Reuters for fund-specific information because the Regents had not " 'demonstrated that the Fund Level Information does not relate to the conduct of the people's business or that it does not have constructive possession of that information.' " (*Id*. at pp. 394-395.) The court ordered the Regents to make a reasonable effort to obtain the requested information.

---

[11] The Pennsylvania court later distinguished *Silberstein* in circumstances involving the e-mail correspondence between council members rather than, as in *Silberstein*, between the township commissioner and members of the public. (*Barkeyville Borough v. Stearns* (Pa. Commw. Ct. 2012) 35 A.3d 91, 97; see also *Mollick v. Township of Worcester* (Pa. Commw. Ct. 2011) 32 A.3d 859, 872 [e-mail exchanges on township business between township supervisors constituting a quorum are records of the township].) In *Barkeyville* the court further reasoned (in words similar to those of the trial court below) that the Borough "created the information sought because . . . the individual Council members make up the Borough government. As a result, the Borough has ownership in the emails." (35 A.3d at p. 97.) We find this reasoning strained; but more importantly, the communications requested in the case before us were not confined to those made exclusively between city council members.

The reviewing court granted writ relief to the Regents, holding that a literal interpretation of section 6252, subdivision (e), is consistent with the purpose of the Act as a whole but also with the FOIA, on which the CPRA was modeled. (*Id*. at p. 400.) Just as in the FOIA, the court concluded, "no language in the CPRA creates an obligation to create or obtain a particular record when the document is not prepared, owned, used, or retained by the public agency." (*Ibid*.) Once the superior court decided that the Regents had not directly "prepared, owned, used, or retained" the requested information, it should not have gone further to require the Regents to produce records in its *constructive* possession.

We agree with amici curiae from the media that *Regents* is not entirely comparable to the facts before us; the records sought in that case were held by private companies rather than parties to the case. (See also *City of San Jose v. Superior Court, supra*, 74 Cal.App.4th at p. 1025 [public interest in protecting privacy of people complaining about airport noise "clearly outweighs" public interest in disclosure of their names, addresses, and telephone numbers].) Obviously there could also have been no suggestion that the Regents and the private companies were "indistinguishable." But the reviewing court's emphasis on avoiding judicial additions to the statutory language is one we endorse as well. And just as the superior court in *Regents* improperly bypassed the definition of "public record" by relying on the agency's "constructive possession," here too we must reject Smith's argument that the CPRA permits disclosure of the requested communications on the theory that the City has "constructive control" over the records of its employees and officials. (*Regents of University of California v. Superior Court, supra,* 222 Cal.App.4th at p. 400.) Moreover, there is no evidence in either party's separate statement of undisputed facts that the City has actual or constructive control over the privately stored communications of its officials.

Smith also attempts to rebut a position not taken by petitioners, that their personal accounts and devices are protected from disclosure by one or more exemptions listed in

section 6254.  Petitioners do not invoke any of these statutory grounds.  Consequently, we need not address Smith's assertion that petitioners waived the issue of whether any section 6254 exemption applies, nor his contention that petitioners failed to meet their burden to demonstrate the applicability of a statutory exemption.

*Conclusion*

We conclude that the language of the CPRA does not afford a construction that imposes on the City an affirmative duty to produce messages stored on personal electronic devices and accounts that are inaccessible to the agency, or to search those devices and accounts of its employees and officials upon a CPRA request for messages relating to City business.  Whether such a duty better serves public policy is a matter for the Legislature, not the courts, to decide.  In addition, it is within the province of the agency to devise its own rules for disclosure of communications related to public business.[12]  The obstacles noted by petitioners and the League— the legal and practical impediments attendant to the extra task of policing private devices and accounts — would also be addressed more appropriately by the Legislature or the agency, not the courts.

*Disposition*

Let a peremptory writ of mandate issue directing respondent court to vacate the order granting Smith's motion for summary judgment and to enter a new order denying

---

[12] The record in this case, for instance, contains minutes of the City's adoption of a resolution addressing this very issue after Smith filed the action.  Although we may take judicial notice of Resolution No. 75293 and its adoption on March 2, 2010 (Evid. Code, § 452, subd. (b); § 459), those documents are not relevant to an interpretation of the language of section 6252.  (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2.)  If this court were to take judicial notice of them, as did the superior court, it would be solely to illustrate the point that cities are free to adopt their own policies and mandates regarding public access to private communications on public issues, whether made during or outside official meetings.

that motion and granting the summary judgment motion of petitioners. Upon finality of this decision, the temporary stay order is vacated.  Costs in this original proceeding are awarded to petitioners.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court |
| Trial Judge: | Hon. James P. Kleinberg |
| Attorneys for Petitioners: | Richard Doyle, City Attorney, Nora Frimann, Assistant City Attorney and Margo Laskowska, Sr. Deputy City Attorney |
| Attorneys for Amicus Curiae In support of Petitioners: | Best, Best & Krieger and Shawn D. Hagerty and Hong Dao Nguyen |
| No Appearance for Respondent | |
| Attorneys for Real Party In Interest: | McManis Faulkner and James McManis, Matthew Schechter, Christine Peek, and Jennifer Murakami |
| Attorneys for Amici Curiae in Support of Real Party in Interest: | Ram, Olson, Cereghino & Kopczynski and Karl Olson |
| | McClatchy Company and Juan F. Cornejo |
| | Jeffrey D. Glasser |
| | James W. Ewert |

*City of San Jose, et al. v. Superior Court; RPI: Smith*
H039498