Filed 6/30/14  Grissom v. Dealer Services CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL GRISSOM,<br><br>    Plaintiff, Cross-Defendant and<br>Appellant,<br><br>        v.<br><br>DEALER SERVICES CORPORATION,<br><br>    Defendant, Cross-complainant and<br>Respondent. | G049331<br><br>(Super. Ct. No. RIC475298)<br><br>ORDER MODIFYING OPINION,<br>DENYING PETITION FOR<br>REHEARING, AND DENYING<br>REQUEST FOR JUDICIAL NOTICE;<br>NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on May 29, 2014, be modified as follows:

On page 17, add the following new paragraph at the end of footnote 8:

> Additionally, Financial Code section 22551, subdivision (b) provides:  "A subsequent advance of money of less than a bona fide principal amount of the specified amount pursuant to a revolving or open-end loan agreement or similar agreement between a borrower and a licensed finance lender which gives the borrower the right to draw upon all or any part of the line of credit, or a loan agreement providing for the making of advances to the borrower from time to time

up to an aggregate maximum amount which gives the borrower the right to draw all or any part of the total amount, shall be deemed to be a loan of a bona fide principal amount of the specified amount or more if the line of credit or the aggregate maximum amount is a bona fide principal amount of the specified amount or more and the initial advance was a bona fide principal amount of the specified amount or more even though the actual unpaid balance after the advance or at any other time is less than a bona fide principal amount of the specified amount." For purposes of section 22551, "the specified amount" is $5,000. (Fin. Code, § 22551, subd. (d).) Therefore, the separate advances on Grissom's flooring line that were less than $5,000 would not be consumer loans, subject to the portion of the California Finance Lenders Law applicable only to consumer loans.

This modification does not affect a change in the judgment. The petition for rehearing is DENIED. Appellant's request for judicial notice is DENIED.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL GRISSOM,<br><br>　　Plaintiff, Cross-defendant and Appellant,<br><br>　　　　v.<br><br>DEALER SERVICES CORPORATION,<br><br>　　Defendant, Cross-complainant and Respondent. | G049331<br><br>(Super. Ct. No. RIC475298)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Ronald L. Taylor, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed.

Ferguson Case Orr Paterson, Wendy C. Lascher and John A. Hribar for Plaintiff, Cross-defendant and Appellant.

Prenovost, Normandin, Bergh & Dawe, Tom R. Normandin, Benjamin K. Griffin and Kristin F. Godeke Baines for Defendant, Cross-complainant and Respondent.

* * *

INTRODUCTION

Michael Grissom, a used car dealer, obtained a commercial line of credit from Dealer Services Corporation (DSC). Grissom drew on the line to acquire vehicles to be sold at his dealership, American Family Auto. Under the terms of the agreement between Grissom and DSC, DSC had a lien on each of the vehicles, securing the money advanced to Grissom from the line of credit. DSC learned that Grissom had sold or otherwise disposed of some of the vehicles without repaying the line of credit, and therefore asserted its right under the parties' agreement to repossess the remaining vehicles on which it had liens.

Grissom sued DSC for breach of contract and negligent misrepresentation; DSC cross-claimed for breach of contract, fraud, conversion, and a common count for money had and received. After a bench trial, judgment was entered in DSC's favor in the amount of $556,088.24. Grissom appeals.

During the presentation of the case-in-chief on his complaint, Grissom, who was representing himself in propria persona, filed a substitution of counsel, substituting in retained counsel. The substitution was filed before DSC began its defense to Grissom's case or its own case on its cross-complaint against Grissom. The trial court refused to allow the substitution because Grissom had not filed a formal, noticed motion, and because DSC would suffer prejudice if the substitution were permitted.

The trial court prejudicially erred in denying Grissom his constitutionally protected due process right to counsel of his choice. The judgment must be reversed. Although the court made a legally incorrect decision, we wish to emphasize that at all

2

times, the court permitted Grissom, a self-represented litigant, a full and fair opportunity to be heard.

In addition to reversing the judgment, we address and decide legal issues, which are not mooted by the reversal of the judgment and are necessary to the decision. Those issues relate to the court's rulings on the demurrer to Grissom's claim for unfair competition, denial of discovery sought by Grissom, and rejection of Grissom's lender's license and usury defenses. On all of these issues, we disagree with Grissom's arguments. Our rulings on these issues will be the law of the case throughout the subsequent progress of this case. (*People v. Barragan* (2004) 32 Cal.4th 236, 246-247.)

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

DSC provides commercial lines of credit, called flooring lines, to automobile dealerships. The dealerships use the flooring lines to purchase an inventory of vehicles to sell to the public. The vehicles purchased by the dealerships secure the flooring line loans. DSC obtained a California finance lender's license on May 27, 2009.

Grissom is a car salesman and automobile sales event promoter. In May 2006, he opened a used car dealership as a sole proprietorship under the name American Family Auto. At the urging of Alfred King, a used car wholesaler who was working with him, Grissom entered into an agreement with DSC to obtain a flooring line. Grissom signed a floor plan application, demand promissory note and security agreement, term sheet, power of attorney, and sole proprietor's certificate. Grissom and King both signed personal guarantees. King cosigned the floor plan application; the application identified King as a guarantor, not an owner.

Grissom's flooring line from DSC became active on August 29, 2006, and 19 loans to purchase vehicles were initiated in the next three days. Grissom claimed he was unaware of the loans until he received an account report dated September 8, 2006, which showed Grissom owed DSC almost $130,000. Grissom used the DSC flooring

3

line to buy 12 more cars at an auction, in an effort to max out the flooring line. Ultimately, DSC loaned almost $200,000 on Grissom's flooring line in 40 separate loans.[1]

In late September and October 2006, DSC conducted audits of Grissom's inventory. The audits revealed that Grissom had sold some of the cars he bought using the DSC flooring line, but had not paid DSC back. As permitted by the parties' agreement, DSC repossessed 13 of the vehicles it had funded. Grissom's dealership failed soon thereafter. In addition to owing money to DSC, Grissom was unable to pay a supplier from whom he had directly obtained two vehicles (without using the DSC flooring line); that supplier made a claim against Grissom's dealer surety bond insurance company. Grissom's bond was cancelled and his dealership's license was revoked. Grissom was also unable to pay his taxes to the State Board of Equalization.

In July 2007, Grissom sued DSC and two DSC employees, Claudia Rogers and Rosa Macias.[2] The complaint was amended four times. DSC, Rogers, and Macias demurred to the fourth amended complaint, and the trial court sustained the demurrer without leave to amend all but two causes of action—for breach of contract and negligent misrepresentation.

DSC filed a cross-complaint against Grissom for breach of contract, a common count for money had and received, conversion, and fraud.[3]

In January 2011, the court first set the case for trial on June 3, 2011. At a hearing in March 2011, the trial court granted Grissom's attorney's motion for leave to

---

[1] The floored vehicle history report shows loans totaling $208,197.50. Grissom notes that one vehicle appears on the list twice. DSC does not challenge Grissom's factual assertion.

[2] Several other entities and individuals were named in Grissom's complaint, but were ultimately dismissed and are not parties to this appeal.

[3] King was originally named in the cross-complaint, but was dismissed. Other claims for breach of written guaranty, possession of personal property, and equitable indemnity were dismissed before or during trial.

4

withdraw.  The court ordered a 30-day stay of all proceedings for Grissom to find a new attorney.  The court refused to vacate the trial date, but told Grissom he could file a motion for a continuance after he retained a new attorney.  After the 30-day stay expired, Grissom's newly retained attorney filed an ex parte application for a continuance of the trial.  The trial court denied the request.  Grissom's attorney immediately substituted out, leaving Grissom in propria persona.

A court trial began on June 14, 2011.  On June 20, Ephraim Obi attempted to substitute in as counsel for Grissom, but the court refused to allow the substitution.  At the conclusion of the trial, the court issued a statement of decision in favor of DSC on all of Grissom's claims and on all claims in its cross-complaint.  The court awarded DSC $123,398.61 in compensatory damages, plus prejudgment interest, and $1 in punitive damages.  Judgment was entered.

Grissom filed a motion for a new trial, which was denied.  DSC's motion for contractual attorney fees was granted.  An amended judgment, awarding DSC a total of $556,088.24, was entered, and Grissom timely appealed.[4]

DISCUSSION

I.

*DENIAL OF SUBSTITUTION OF ATTORNEY DURING TRIAL*

On the fifth day of what would ultimately be a nine-day trial, just before Grissom was to start his testimony in his case-in-chief on the complaint, he asked the court for permission to substitute in retained counsel.  The newly retained attorney, Ephraim Obi, initially advised the court he was only going to ask questions of Grissom during Grissom's testimony.  (The parties had earlier stipulated that Grissom could testify

---

[4]  Grissom's notice of appeal was filed before the amended judgment was entered. We exercise our discretion to treat the notice as filed immediately after entry of judgment.  (Cal. Rules of Court, rule 8.104(d)(2).)

5

in a narrative form.) Obi then told the court he had filed a substitution of attorney form with the clerk's office, and was attempting to substitute in as Grissom's counsel for the remainder of the trial. The substitution of attorney form does not purport to limit Obi's scope of representation in any way.

Counsel for DSC and for the other defendants still in the case objected to Grissom substituting in a new attorney during trial. Their objection was based on the prejudice they claimed they would suffer based on concessions they had made due to Grissom's in propria persona status, such as paying the entirety of the court reporter's fees, withholding objections to testimony, and withholding objections to the admission of exhibits.

The court denied Grissom's substitution of counsel on two grounds: the lack of a formal, noticed motion to substitute in as counsel and the prejudice to the other parties. The court permitted Obi to confer with Grissom during breaks. Grissom later renewed his request to substitute Obi in as counsel; the request was again denied.

In a civil action, a party has a due process right to appear through counsel retained at the party's own expense. (*Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 925-926; *In re Kathy P.* (1979) 25 Cal.3d 91, 102; *Kim v. Orellana* (1983) 145 Cal.App.3d 1024, 1027.) A civil litigant may change its counsel at any time, and the trial court generally does not have the discretion to refuse to accept a consensual substitution of attorney. (Code Civ. Proc., § 284, subd. 1; *Hock v. Superior* Court (1990) 221 Cal.App.3d 670, 673.) The trial court does, however, have discretion to deny a motion to substitute counsel before or during trial, when the substitution would require a continuance of the trial. (*In re Z.N.* (2009) 181 Cal.App.4th 282, 294; see Code Civ. Proc., §§ 177, subd. 1, 128, subd. (a).) In this case, Grissom did not request a continuance of the trial when he sought to substitute Obi in as counsel; Obi was in the courtroom and stated he was prepared to begin questioning Grissom immediately.

6

There is no support for the trial court's refusal to grant the substitution of counsel due to the lack of a formal, noticed motion. No state or local rule of court requires a motion to consensually substitute counsel in for a party representing himself or herself in propria persona.[5] Accordingly, we conclude the trial court erred in denying Grissom's request to substitute in counsel.

We next consider whether this decision was prejudicial to Grissom. We hold that a rebuttable presumption of prejudice applies when the constitutional right to counsel is denied to a civil litigant. In a criminal case, prejudice is presumed when the defendant is denied counsel because the consequences of deprivation of counsel are "'necessarily unquantifiable and indeterminate.'" (*United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 150; see *Mickens v. Taylor* (2002) 535 U.S. 162, 166.) It is no less difficult to quantify the prejudice suffered by a civil litigant denied the right to counsel during trial. In an analogous situation, where juror misconduct occurs in either a criminal or a civil case, a presumption of prejudice arises because of the practical difficulty in establishing actual prejudice. (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 416-417.)

In this case, DSC failed to rebut the presumption of prejudice to Grissom. The trial court's refusal to allow a substitution of attorney occurred at a critical moment during the trial. Grissom was midway through the presentation of his case-in-chief; he had already questioned two witnesses. After the substitution was sought and rejected, Grissom called and questioned four more witnesses, and provided his own testimony in a narrative form. When Grissom rested his case-in-chief, DSC recalled two of Grissom's witnesses, and called three additional witnesses. After DSC rested its defense, the parties

---

5 Code of Civil Procedure section 284, subdivision 2 allows a change of attorney "[u]pon the order of the court, upon the application of either client or attorney, after notice from one to the other." Under this section, because the substitution here was consensual, no application by either the client (Grissom) or the attorney (Obi) was necessary.

7

provided closing arguments only for Grissom's complaint. In support of its cross-complaint, DSC called two witnesses, and read from Grissom's deposition transcript. Both sides rested as to DSC's cross-complaint, with Grissom apparently failing to call any additional witnesses in rebuttal to, or in defense against, DSC's claims.

We agree with DSC that the state of the record before us is such that there would be substantial evidence to support a judgment in DSC's favor. When we consider the record as a whole, however, particularly in light of the timing of the request to substitute in counsel vis-à-vis the status of the trial proceedings, we cannot say the evidence in DSC's favor was so overwhelming that DSC can be said to have rebutted the presumption of prejudice.

We could stop the analysis at this point because DSC did not rebut the presumption of prejudice. In addition, however, Grissom has shown actual prejudice. On appeal, Grissom identifies many ways in which he claims an attorney would have made a difference in this case after denial of his request to substitute in counsel. We need not address each one; however, we will address two issues we believe are compelling and most indicative of the prejudice Grissom suffered as a self-represented litigant. First, Grissom argues that an attorney would have contested DSC's claims for fraud, conversion, money had and received, and DSC's request for punitive damages. While evidence supporting DSC's claims was admitted during Grissom's case-in-chief (and particularly before the point at which he sought to substitute in counsel), an attorney might have offered compelling evidence rebutting that evidence, or argued the evidence did not support the elements of the causes of action or the damage claims.

Second, Grissom argues that if the trial court had not refused to accept the substitution of attorney, Grissom would not have been forced to testify in a narrative form. This argument is compelling. The assistance of an attorney in framing questions and presenting Grissom's testimony in a linear and coherent fashion might well have made a difference in what evidence was admitted and how that evidence was perceived

8

by the court. Grissom was unquestionably the key witness in his own case and in defense of DSC's claims. The prejudice he suffered by providing his testimony in a narrative form cannot be understated.

Reversal of the trial court's denial of Grissom's right to substitute in retained counsel requires reversal of the judgment. We will address and decide in this opinion certain appealable legal issues that were decided by the court and are not mooted by the reversal of the judgment.

## II.

### *DID THE TRIAL COURT ERR IN SUSTAINING THE DEMURRER TO GRISSOM'S CLAIM FOR UNFAIR COMPETITION?*

DSC demurred to Grissom's fourth amended complaint, arguing, in part, that Grissom had not pled standing to assert a claim for violation of the unfair competition law under Business and Professions Code section 17200 (the UCL), and that Grissom had not stated facts sufficient to support that cause of action. The trial court sustained the demurrer without leave to amend. "We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action. [Citation.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. [Citation.] We construe the pleading in a reasonable manner and read the allegations in context. [Citation.] 'We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. [Citation.]' [Citation.]" (*Entezampour v. North Orange County Community College Dist.* (2010) 190 Cal.App.4th 832, 837.)

For an individual to have standing to bring a claim for violation of the UCL, he or she must "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204.) Grissom's claim for violation of the UCL in the fourth amended complaint alleged, in relevant part:

9

"69.  Plaintiff alleges that Defendants have engaged in unfair competition and unfair trade practices by making statements about their business and the conditions for making or negotiating loans that was false and misleading or omitted material information in violation of section 22161 of the California Financ[ial] Code.

"70.  DSC omitted to disclose that they did not posses[s] a license to act as a Finance lender or Broker in California.  See below.

"Message From the President:  Welcome to Dealer Services Corporation! From DSC Website.

"We are pleased that you have chosen to investigate DSC as a potential lender for your inventory financial needs.  We desire to become an integral part of your floor plan financing, and we look forward with anticipation to the success of our companies as we become your financial partner.  We believe that enthusiasm, dedication, and team spirit are the essential ingredients in providing quality service to our customers. DSC employees are the industry's leaders in developing products that have serviced this industry for many years.  Our employees have years of inventory financing experience that enables us to understand customer needs and provide old fashioned service.  We want to get back to basics when it comes to flexible finance programs that help our customers become winners in their respective businesses.  The motto of King Arthur and the Knights of the Round Table was, 'In serving one another, we become free.'  We are free to do all that we can do in order to be all that we can be in developing and servicing products that satisfy each customer's financial needs.

"We are excited for the opportunity to provide to you that 'Service' is our middle name.

"Sincerely,

"John E. Fuller

"71.  Defendants further made these representations, and other similar representations, with the intention of inducing Plaintiff to act in reliance on such

10

representations in the manner herein alleged, or with the expectation that members of the general public are likely to be deceived.

"72. As a result of his reliance on Defendants['] misrepresentations, Plaintiff has suffered damages and seek[s] restitution of the amount received by DSC on Plaintiff['s] account.

"73. [Unf]air competition is defined in the Business and Professions Code section 17200 as an 'unlawful, unfair, or fraudulent business practices and unfair[,] deceptive, untrue or misleading advertisement and any other act[.]' Defendants committed the acts alleged herein maliciously, fraudulently and with the wrongful and deliberate intention of injuring Plaintiff's business and benefiting their common enterprise. In doing so, Defendants acted in bad faith and with an improper motive amounting to malice and conscious disregard of Plaintiff's right." (Underscoring, italics, & some capitalization omitted.)

In the fourth amended complaint, Grissom failed to allege he suffered injury in fact and lost money or property *as a result of* DSC's alleged acts of unfair competition. Grissom did not allege DSC's lack of a lender's license caused him injury. Further, although Grissom alleged he suffered damages as a result of DSC's misrepresentations, no misrepresentations are alleged in the fourth amended complaint.[6] The trial court did not err in sustaining the demurrer as to this cause of action.

The remaining question is whether the trial court abused its discretion in sustaining the demurrer without leave to amend. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Grissom, as the plaintiff, bore the burden of proving a reasonable probability that any defect in the pleading could be cured by amendment. (*Ibid.*) In his opposition to the

---

[6] Grissom's opposition to the demurrer reads, in relevant part, as follows: "The Demurrer claims that Plaintiff is required to show actual injury. Plaintiff does not dispute this claim. The FAC [(fourth amended complaint)] pleads such actual injury in the Fifth Cause of Action by facts that he lost his business due to such actions of Defendants at a stated vales [*sic*]. Such is direct representation to plead the required actual injury."

11

demurrer, Grissom stated that if the trial court disagreed with his contention the fourth amended complaint stated a cause of action, "Plaintiff can surely amend the pleading to avoid any deficiency the court should find," without differentiating between any of the different causes of action. At the hearing on the demurrer, after the court announced its tentative ruling to sustain the demurrer without leave to amend as to all but the breach of contract and negligent misrepresentation claims, Grissom's counsel said, "with regard to the sustaining of the demurrer without leave as to the conversion, the conspiracy, and the intentional interference of the [ad]vantage of contact, however it's plead[ed]. I believe that those can be stated and stated well. And I would ask the Court to give me a single shot at it." Counsel did not specifically ask the court for leave to amend the UCL claim.

In his opening brief, Grissom argues the trial court abused its discretion in refusing to grant leave to amend because, "[a]t the very least, it was readily apparent that Grissom could amend his complaint to state a cause of action for unfair competition based on DSC's violation of the [California Finance Lenders Law]. Grissom should be entitled to restitution of all fees and interest that DSC collected from Grissom while illegally lending money in California." But, as noted *ante*, the complaint alleged that DSC had violated the California Finance Lenders Law (Fin. Code, § 22000 et seq.) by failing to obtain a lender's license. The fourth amended complaint fails to allege that Grissom suffered any loss *as a result of* DSC's lack of a license or that DSC made material misrepresentations regarding its lack of a license; the request for leave to amend fails to include a statement that Grissom could make such required allegations in yet another amended complaint.

There is no reasonable possibility Grissom could amend the fourth amended complaint to properly allege standing to bring the UCL claim. The trial court did not abuse its discretion in sustaining the demurrer to the UCL claim without leave to amend.

12

## III.

*DENIAL OF DISCOVERY DUE TO FAILURE TO PURSUE PUBLIC RECORDS REQUEST*

In April 2009, Grissom served a deposition subpoena for the production of business records on the Department of Corporations (the discovery subpoena). The discovery subpoena requested the "complete case file and investigation reports, with copy of any actions or notices by the department to any company or individual in case numbered CAS-40215-0062BR." DSC filed a motion to quash the discovery subpoena. The trial court granted the motion without prejudice, to enable Grissom to exhaust the administrative remedy of seeking the documents under the California Public Records Act (Gov. Code, § 6250 et seq.). Grissom did not serve another deposition subpoena duces tecum on the Department of Corporations, and nothing in the appellate record shows what, if any, documents he obtained through a public records request.

In May 2011, Grissom served a trial subpoena duces tecum on the Department of Corporations (the trial subpoena). The trial subpoena demanded the appearance of the Department of Corporations deputy commissioner of enforcement, and the production of "[a]ll documents that relate, mention or refer to the Settlement Agreement between the California Department of Corporations and Dealer Services Corporation signed by you June 25, 2009," and "[a]ny document referring to the Department of Corporations [sic] requests, demands, orders or notice to Dealer Services [sic] to stop, cease or refrain from making loans in California." (Some capitalization omitted.) The Department of Corporations filed an application to quash the trial subpoena. The trial court granted the application on the ground that the only documents being sought were protected by a settlement privilege. (The settlement agreement itself was in Grissom's possession; he had attached a copy of it to his opposition to the application to quash the trial subpoena.)

On appeal, Grissom argues that the trial court abused its discretion in quashing both the discovery subpoena and the trial subpoena.

13

As to the discovery subpoena, the trial court granted the motion to quash so Grissom could exhaust the administrative remedy of seeking the documents in question by means of a public records request. We are unaware of any requirement that a party in litigation pursue a public records request before serving discovery on a government agency. (See Code Civ. Proc., § 2020.010 [deposition subpoena may be used to obtain pretrial discovery from "a person who is not a party to the action"]; *Kling v. Superior Court* (2010) 50 Cal.4th 1068, 1074 ["'Documents and records in the possession of nonparty witnesses *and government agencies* other than the agents or employees of the prosecutor are obtainable by subpoena duces tecum'" (italics added)].)[7]

As to the trial subpoena, in the application to quash, the Department of Corporations averred that the settlement agreement was a public document previously provided by the Department of Corporations to Grissom, and that no order for DSC to desist or refrain from certain activity had been issued. However, Grissom attached to his opposition to the application to quash the trial subpoena excerpts from the deposition of DSC's general counsel, who testified DSC had received a letter from the Department of

_____

[7] Generally, a California Public Records Act request is more beneficial to the requesting party than a deposition subpoena duces tecum. In *Wilder v. Superior Court* (1998) 66 Cal.App.4th 77, 79-80, the appellate court was presented with a situation in which, before initiating a lawsuit, an individual filed public records requests. The government agency refused to produce some of the requested documents, and the individual filed a petition for a writ of mandate to compel their production. (*Id.* at p. 81.) The trial court dismissed the petition, concluding that the individual could obtain the documents by filing a lawsuit and propounding discovery. (*Ibid.*) In reversing the trial court, the appellate court noted: "Putting aside for the moment the time, effort, and financial resources required to institute a lawsuit against a governmental entity and to promulgate discovery requests, discovery is limited to matters 'relevant to the subject matter involved in the pending action' which are themselves 'admissible in evidence' or 'appear[] reasonably calculated to lead to the discovery of admissible evidence.' [Citation.] A [California Public Records Act] request can cover anything the person making the request suspects the agency might have in its files. As a member of the public, petitioner is entitled to the broader categories of documents available under the [California Public Records Act]." (*Id.* at p. 83.)

14

Corporations requesting that DSC stop doing business in California until a lender's license was issued. Based on this evidence, nonprivileged documents responsive to the trial subpoena were likely to exist in the Department of Corporations's records. The trial court erred by granting the application to quash the trial subpoena.

Even if the trial court erred in quashing the discovery subpoena or the trial subpoena, Grissom must establish prejudice to succeed on appeal. Although Grissom fails to explain explicitly what documents he believes would have been produced in response to the discovery subpoena or trial subpoena, based on the context of the parties' arguments, we presume they are documents relevant to Grissom's contention that DSC violated the California Finance Lenders Law by failing to obtain a lender's license from the State of California. As explained in detail *post*, DSC's lack of a valid lender's license at the time it entered into the contract with Grissom does not void or invalidate the contract. The loan from DSC to Grissom was a commercial loan, not a consumer loan. Even if DSC violated the California Finance Lenders Law by making a loan to Grissom without having a valid lender's license from the Department of Corporations, the California Finance Lenders Law only makes such a loan voidable if it were a consumer loan. Further, as explained *ante*, the demurrer to the UCL claim—which was based on the lack of a valid lender's license—was properly sustained. The documents sought by the discovery subpoena and the trial subpoena would not be relevant to any issue in this case. Any error by the trial court in quashing the discovery subpoena for Grissom's failure to first seek the documents by means of a public records request or in quashing the trial subpoena was not prejudicial.

IV.

*REJECTION OF LENDER'S LICENSE AND USURY DEFENSES*

Grissom argues that the trial court erred by failing to consider his defenses to DSC's claims—DSC's lack of a lender's license, and usury. Grissom argues that

15

although no ruling on those issues had been made before trial, the court erroneously believed the issues had already been decided against Grissom.

Different portions of the California Finance Lenders Law apply to commercial and consumer loans. (Fin. Code, § 22001, subds. (b) & (c).) Grissom argues that because DSC violated the portion of the California Finance Lenders Law that requires a lender to be licensed by the State of California (Fin. Code, § 22100, subd. (a)), the contract between DSC and Grissom was void and unenforceable, citing Financial Code section 22750, subdivision (b), which reads as follows: "If any provision of this division is willfully violated in the making or collection of a loan, whether by a licensee or by an unlicensed person subject to this division, the contract of loan is void, and no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction."

DSC does not dispute it was not licensed under the California Finance Lenders Law at the time it entered into the contract with Grissom; it does, however, dispute the legal significance of that failure. We need not determine whether DSC's lack of a lender's license in August 2006 constitutes a willful violation of the California Finance Lenders Law, however, because Financial Code section 22750 does not apply to commercial loans, such as the flooring line between DSC and Grissom. (*Central Valley Ranch, LLC v. World Wide Investments, LLC II.* (E.D.Cal., Jan. 24, 2012, No. 1:10cv00020 LJO DLB) 2012 U.S.Dist. Lexis 7953, pp. *11-*13 [commercial loans were not void, despite lender's failure to be licensed in California; Financial Code section 22750 applies only to consumer loans]; *WF Capital, Inc. v. Barkett* (W.D.Wn., Aug. 2, 2010, No. C10-524RSL) 2010 U.S.Dist. Lexis 78086, pp. *15-*16 [same]; *In re Jesse & Joan* (Bankr. N.D.Cal. 2001) 266 B.R. 192, 193 [same]; see Fin. Code, § 22001,

16

subd. (c) [commercial loans not subject to article 2 of chapter 4 of the Financial Code, in which section 22750 appears].)[8]

The trial court did not err in preventing Grissom from pursuing DSC's lack of a lender's license because it was not a valid defense to any claims raised by DSC. Even accepting Grissom's contention that DSC misled the trial court as to whether there had been a definitive ruling on the exclusion of the lender's license defense, it was irrelevant as the issue was not, and could not have been, before the court.[9]

---

[8] Grissom argues the loan from DSC was a consumer loan, not a commercial loan, citing Financial Code section 22204, subdivision (a), which reads as follows: "In addition to the definition of consumer loan in Section 22203, a 'consumer loan' also means a loan of a principal amount of less than five thousand dollars ($5,000), the proceeds of which are intended by the borrower for use primarily for other than personal, family, or household purposes. [¶] For purposes of determining whether a loan is or is not a consumer loan, the lender may rely on any written statement of intended purposes signed by the borrower. The statement may be a separate statement signed by the borrower or may be contained in a loan application or other document signed by the borrower. The lender shall not be required to ascertain that the proceeds of the loan are used in accordance with the statement of intended purposes." Grissom ignores subdivision (b) of section 22204, which further explains how consumer loans under that section are defined: "A consumer loan under this section is a loan secured in the manner provided for in this division if it is secured, in whole or in part, by any lien on, security interest in, assignment of, or power of attorney relative to income arising from the operation of a business by the borrower, such as accounts, and chattel paper, including the right to payment for accounts or chattel paper sold by the borrower prior to or contemporaneously with the making of the loan." DSC's loans to Grissom were secured by the vehicles purchased using the flooring line; therefore, they do not qualify as consumer loans.

[9] DSC argues that Financial Code section 22713 prohibits private rights of action under the California Finance Lenders Law. A federal district court agreed with this analysis in *Cazares v. Household Fin. Corp.* (C.D.Cal., July 26, 2005, No. CV 04-6887 DSF (SSx)) 2005 U.S.Dist. Lexis 39222, page *36. However, a violation of the California Finance Lenders Law may be the basis for a claim under the UCL. (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 839 ["It is not necessary that the predicate law provide for private civil enforcement"]; *Cazares v. Household Fin. Corp.*, *supra*, 2005 U.S.Dist. Lexis 39222 at p. *37.) Therefore, the lack of a private right of action in the California Finance Lenders Law is not determinative on this issue. However, as explained *ante*, the UCL claim was properly dismissed because Grissom did not allege, and it was not reasonably probable that he could allege, standing.

17

Grissom also argues that because DSC did not have a valid lender's license from the State of California in 2006, DSC was subject to the interest rate limitations of article XV, section 1 of the California Constitution. Because, Grissom argues, the interest rate charged by DSC was higher than the constitutional rate, the interest rate was usurious. Grissom filed a motion in limine before trial to exclude evidence of alleged damages in excess of California's usury limits. When the case was called for a bench trial, Grissom asked for a ruling on the motion:

"The Court: Okay. How about you, Mr. Grissom? Is there anything, sir, that you wanted me to litigate that was raised by yourself in the way of the pretrial in limine motions?

"Mr. Grissom: That would be the—I'm sorry. I don't remember what number it was. I believe it was 2, for the usury. [¶] . . . [¶]

"The Court: Wouldn't you just raise that as an objection during the course of the trial, which you've raised in your Motion In Limine 2?

"Mr. Grissom: Yes, I could, Your Honor.

"The Court: I mean, I'm not ruling on it. Why don't you just raise it during the course of trial?

"Mr. Grissom: Okay. Yes, sir." (Some capitalization omitted.)

Grissom's appellate briefs do not provide any citations to the reporter's transcript showing where he objected to DSC's evidence based on the usury defense.[10] Grissom's claim in his appellate briefs that the trial court prevented him from raising the usury defense is not supported by this record.

---

[10] Grissom cites to a portion of the reporter's transcript where DSC objected to Grissom's questions regarding the name under which DSC was doing business in California, on the ground it was not relevant to any issue in the case. Grissom responded: "Well, I've already said to you, Your Honor, I've entered into an agreement in which Dealer Services Corporation charged me over 500 percent interest rate without a license. And that in my mind is illegal."

Even if the interest rate in the parties' agreement was usurious under California law, it would not invalidate the contract or prevent DSC from recovering the amount owed by Grissom, plus interest at the legal rate. (*Epstein v. Frank* (1981) 125 Cal.App.3d 111, 122-123.) A contract incorporating an interest rate valid under the laws of another state but usurious under California law is not invalid if the other state has a substantial relationship to the parties or their transaction, or there is another reasonable basis for the parties' choice of law. (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464-465.) Grissom does not explain whether Indiana law, which was provided for in the contract, permits a higher rate of interest. The state in which a commercial lender is based has a substantial relationship to the transaction.[11]

DISPOSITION

The judgment is reversed. Because each party prevailed in part, both shall bear their own costs on appeal.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

---

[11] The choice-of-law provision in the contract cannot make the California Finance Lenders Law inapplicable. (*Brack v. Omni Loan Co., Ltd.* (2008) 164 Cal.App.4th 1312, 1326.) The California Finance Lenders Law does not make the choice-of-law provision unenforceable for all purposes, however.

19